[Civ. No. 4844. Third Appellate District.—March 21, 1933.]

AETNA LIFE INSURANCE COMPANY (a Corporation) et al., Petitioners; v. INDUSTRIAL ACCIDENT COMMISSION and R. W. BILLINGS, Respondents.

Redman, Alexander & Bacon and R. P. Wisecarver for Petitioners.

A. I. Townsend for Respondents.

THOMPSON, J.—In this petition for a writ of *certiorari,* the insurance carrier of an accident policy contends the award of the Industrial Accident Commission in favor of an injured employee of the insured person is unreasonable and illegal. It is asserted the average weekly wages of the laborer, which were accepted by the Commission as the basis for its award, are not estimated according to the rule prescribed by section 12 of the Workmen's Compensation Act.

R. W. Billings, the claimant, was employed by the insured, Stokesberry Lumber and Wrecking Company, as a laborer at a wage of $4 a day. He was engaged in helping to wreck structures. His employment was not regular. He was paid a daily wage while the work lasted. He was not hired by the week or month or job. On the first day of his employment, March 18, 1932, a scaffold upon which he was working broke, causing him to fall to the ground, fracturing a rib and several vertebrae. A claim for compensation was duly presented. At the hearing it appeared he had been hired by the Stokesberry Company in the same character of work as a wrecker for three years. During the year previous to the time of his injury the claimant worked at wrecking buildings for the same employer from March 3, 1931, to February 15, 1932. The evidence shows that he was engaged during that year in this particular work for the period of sixteen weeks with an aggregate employment of 86 days, for a total compensation of $408. This was an average employment during that period of over five days a week. The record shows that in only one week of that period was he employed less than five days a week. During eight weeks of that period he was actually engaged six days a week. The evidence also shows that from October 23, 1931, to March 18, 1932, he worked for the Globe Flour Mills, trucking and sewing sacks. For this last-mentioned

service he was paid the additional total sum of $273. During the year previous to the time of his injury he was engaged for twenty-five days in digging a cellar and building a house for himself, except for which work, he might have been otherwise employed. The claimant testified that he had previously worked for a firm by the name of Stroud, Marshall & Tarke sewing sacks, and that during the year prior to the time of his injury he could have worked for that firm from September to January at a compensation of from $5 to $7.50 per day, except that he had received a sum of $400 from other sources and voluntarily took a vacation to spend this money. There is no evidence of the average weekly earnings of other workmen who were engaged in wrecking structures during the year previous to the time of his injury.

The Commission found that the claimant was injured in the course of his employment, and that it "caused temporary total disability continuing from March 18, 1932, to and including August 19, 1932, and indefinitely, entitling the employee to $12.35 a week during said time, exclusive of the waiting period of seven days. . . . The foregoing weekly benefit is based upon wages of $4.00 a day for employment five days a week." An award of $89.46, and the further sum of $12.35 a week, beginning August 20, 1932, until the termination of disability, was accordingly rendered against the insurance carrier. This award is challenged as erroneous and excessive.

█ The petitioner contends that the "average weekly earning capacity" of the injured employee should be determined by ascertaining the average weekly wages which he actually received during the entire year previous to the time of his injury.

We do not so construe the law. We think this award conforms to the requirements for estimating average earning ability declared by sections 9 and 12 of the Workmen's Compensation Act of California. (Stats. 1917, p. 831, and amendments; 2 Deering's Gen. Laws, 1931, p. 2272, Act 4749.) The Commission found that the claimant suffered "temporary total disability". This finding is not questioned. Section 9 (b) 2 provides:

"The disability payment shall be as follows: (1) If the injury causes temporary total disability, sixty-five per cent of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market."

Section 12 (3) provides that:

"*If the earnings be irregular*, or specified to be by the week, month, or other period, then the average weekly earnings mentioned in subdivisions (1) and (2) above shall be ninety-five per cent of the average earnings during such period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay."

Section 12 (4), as amended in Statutes of 1929, page 553, provides:

"Where the employment is for less than five days per week or is seasonal or where for any reason the foregoing methods for arriving at the average weekly earnings of the injured employee cannot reasonably and fairly be applied, such average weekly earnings shall be taken at ninety-five per cent of such sum as shall reasonably represent the *average weekly earning capacity* of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments during the year preceding his injury; provided, that the earnings from other occupations shall not be allowed in excess of the rate of wages paid at the time of the injury."

The rule contended for by the petitioner would be unreasonable under some circumstances. It might result in grave injustice to a claimant. A workman may possess excellent earning ability and yet on account of temporary illness or other cause he may be prevented from working throughout a great portion of the year previous to his injury. Under such circumstances, an amount based only upon the average sum which he actually received during that year, regardless of the unusual conditions affecting his employment, would not fairly represent his earning capacity. We are of the opinion the language employed in paragraph (4) of section 12 of the Workmen's Compensation Act, which authorizes the acceptance of "such sum as shall reasonably represent the *average weekly earning capacity* of the injured employee at the time of his injury" should be construed to mean that

the wages of the employee which were actually earned during the year, together with all the surrounding circumstances affecting his earning ability, should be considered in ascertaining a figure which will reasonably represent his weekly earning capacity. Capacity to earn money necessarily contemplates all the surrounding circumstances and conditions disclosed by the evidence which may indicate one's usual and ordinary ability to earn wages, including his physical ability, his natural talents, his training, his opportunity to secure employment and the condition of his health.

In the case of *Texas Electric Ry.* v. *Worthy,* (Tex. Civ. App.) 250 S. W. 710, 712, it is said:

"Earning capacity does not necessarily mean the actual earnings that one who suffers an injury was making at the time the injuries were sustained. It refers to that which, by virtue of the training, the experience, and the business acumen possessed, an individual is capable of earning."

The amount of money which one has previously earned is an excellent criterion by which to estimate his future earning ability provided conditions remain the same. But to confine that estimate to an average of the sum one actually received in a specified period of time, regardless of circumstances, may be very unjust and misleading. The provisions of the Workmen's Compensation Act above referred to clearly recognize this distinction. By inference, the language of that section refutes the theory of petitioner that the average weekly earnings which were actually received by the claimant during the year preceding the time of his injury controls the amount of the award. That section directs the "average weekly earning capacity" to be ascertained, "due consideration being given to his actual earnings from all sources and employments during the year preceding his injury". This language clearly means that the actual earnings for the previous year shall receive reasonable consideration, together with all other facts and circumstances surrounding the case, in ascertaining his average weekly earning capacity at the time of the accident. Since the statute specifically requires only due and not exclusive consideration to be given to previous wages actually received, it is evident that the legislature intended to authorize

a consideration of other circumstances. In ascertaining this average earning capacity the Commission is vested with some discretion. Except for an abuse of this discretion the award of the Commission may not be interfered with. It appears that the amount of wages actually paid to the claimant during the year previous to the time of his injury did receive due consideration. The record shows that he received $408 compensation for sixteen consecutive weeks of the same sort of work he was performing at the time of his injury. That was an average of $25.50 a week. He was allowed an average of only $20 per week. The record shows that from all the other work which he performed during that year, he never received less than $4 a day. This is the per diem rate which was allowed by the Commission. This is fair and reasonable and in accordance with the rules prescribed by the statute. The Commission is specifically charged with ascertaining and allowing a reasonable and fair award. The section above referred to declares that ''where for any reason the foregoing methods of arriving at the average weekly earnings of the injured employee cannot reasonably and fairly be applied, such average weekly earnings shall be taken at ninety-five per cent of such sum as shall reasonably represent the average weekly earning capacity ·of the injured employee at the time of his injury''. It is also provided this sum shall not exceed ''the rate of wages paid at the time of the injury''. In the present case, there is no dispute regarding the fact that the rate of wages which was received by the claimant at the time of his injury was $4 a day.

In the recent case of *Department of Water & Power of Los Angeles* v. *Industrial Acc. Com., ante,* p. 231 [19 Pac. (2d) 832], an award was affirmed which is based upon the average weekly earning capacity of an injured employee. The evidence shows that he had been engaged as a messenger in carrying packages for a period of thirty days at a wage of $4 a day. During the year prior to his injury the claimant had been irregularly employed at another occupation earning thereby an additional $150 within a period of about a month. The evidence shows no other specific employment during that year. Nor does it appear that any other employee was engaged in the same line of

work for a period of 260 days during that year. The Commission found that the claimant's average weekly earning capacity was $4 a day for a seven-day week. An award of $28 per week was accordingly rendered in favor of the claimant. Upon a writ of *certiorari* it was contended this award was not supported by the evidence. The Appellate Court said:

"We are unable to say as a matter of law that the respondent commission erred in adopting $4.00 per day as reasonably representing the average weekly earning capacity of the injured at the time, taking into consideration for such purpose prior actual earnings."

The cases upon which the petitioner relies are not in conflict with the foregoing construction of the statute. *Wingard* v. *Industrial Acc. Com.*, 57 Cal. App. 674 [207 Pac. 1030, 1032], involved the question as to whether an injured workman was entitled to compensation at the rate of $4.16 a day as a passer of rivets used in the construction of a steel frame, which job he was temporarily filling at the time of his injury, or whether he was entitled to an award based upon the wages of a riveter, which was his regular occupation. He had been previously injured and was temporarily filling the place of a rivet passer at the time he was injured. Subdivision 4 of section 12 of the Workmen's Compensation Act provides that in computing the average weekly earning capacity of an injured employee "the earnings from other occupations shall not be allowed in excess of the rate of wages paid at the time of the injury". In the Wingard case the court said:

"As the finding of respondent Accident Commission was based upon the exact wage paid to petitioner at the time of his injury the requirement of the proviso seems to have been met precisely."

No other issue material to this cause appears to have been involved in that case.

The award which was rendered in the case of *Mahaffey* v. *Industrial Acc. Com.*, 176 Cal. 711 [171 Pac. 298, 299], was reversed because it affirmatively appeared the claimant was irregularly engaged in the work of cleaning roofs, at which he was employed at the time of his injury, not more than fifteen or twenty days during any year. The

record fails to show that he was ever engaged in any other remunerative work. He was sixty-eight years of age. Yet the Commission fixed his compensation at 300 times the amount of his daily wage. Of course, this finding was in conflict with the undisputed record. There was no evidence he was capable of earning more than $60 a year, yet his average annual earning ability was found to be $900. In the present case the evidence shows that Billings was capable of earning approximately $1400 a year. He did actually earn $681 during the year prior to his injury. He worked 25 days digging a cellar and building a house for himself, except for which he testified he would have been able to earn $4 a day during that period. He testified that he had previously worked for Stroud, Marshall & Tarke, and could have worked for them from September to January seven days a week at from $5 to $7.50 a day. This is sufficient evidence to support the finding of the Commission in the present case that the average weekly earning capacity of the claimant at the time of his injury was $12.35 a week. This was estimated on the assumption that he was able to obtain similar employment which would have enabled him to work 260 days during the previous year at an average wage of $4 a day. In the case last cited the court did not hold that the average earning capacity depended upon the exact mathematical calculation of what the claimant actually earned during the year previous to the accident. The court said:

"The commission's authority to make an award depends upon evidence *tending to show* the existence of the conditions justifying the award."

Likewise, in the case of *Littler* v. *George A. Fuller Co.*, 223 N. Y. 369 [119 N. E. 554], cited by respondent, the average weekly wage of the claimant was estimated on the basis of his ability to secure 300 days of work during the year previous to his injury. The court said:

"The evidence is to the effect that they average about 30 weeks of employment at their trade in each year."

There was no evidence that the claimant had an opportunity to secure any other employment. The court did not say his earning capacity was confined to an average of the amount which he actually earned the previous year. It did say:

"The order of the Appellate Division should be reversed and the proceeding remitted to the State Industrial Commission to compute the average weekly wage of claimant on the basis of his actual annual earning *capacity.*"

This means, not the amount which he actually did earn, but the sum he was reasonably capable of earning under the circumstances disclosed by the evidence.

In the present case the claimant was employed "irregularly". He was not hired by the year, month or week. He was not employed for a definite five or six days' service per week. During the year prior to the time of his injury he was employed by the same master and engaged in the same character of work sixteen weeks, with 86 days' actual service, for which he was paid $408. The employer testified that the claimant was regularly paid $4 a day. In all the work which he performed during the year he was never paid less than $4 a day. He earned the additional sum of $273 that year employed in a similar character of labor. The record indicates that he might have been employed that year for several additional months, if he had so desired, at an average wage in excess of the sum which was awarded by the Commission. There is no evidence to the contrary. The finding to the effect that the claimant's "average weekly earning capacity" at the time of his injury was $20 a week is amply supported. Ninety-five per cent of this sum is $19. Sixty-five per cent of that sum is $12.35 per week. This is the exact amount which was allowed by the Commission. It is estimated in accordance with the provisions of section 9 (b) 2 and subdivision 4 of section 12 of the Workmen's Compensation Act. It appears to be a just and reasonable allowance representing the average weekly earning capacity of the claimant.

The award is affirmed.

Pullen, P. J., and Plummer, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1933.