[Civ. No. 11767. First Dist., Div. One. Oct. 25, 1941.]

COLONIAL MUTUAL COMPENSATION INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and FRANK MILLER, Respondents.

Keith & Creede and Percy J. Creede for Petitioner.

Everett A. Corten, Mathew O. Tobriner and Rinaldo Sciaroni, Jr., for Respondents.

KNIGHT, J.—The petitioner, as insurance carrier for John Trollan, seeks to have annulled an order made by the Industrial Accident Commission amending its original findings and award in favor of Frank Miller, who sustained injuries on May 14, 1940, while employed as laborer by Trollan.

The injuries arose out of and in the course of Miller's employment, and in July, 1940, he filed an application with the commission for the recovery of compensation. The hearing took place before the referee the following month, and on October 23, 1940, the commission, adopting the findings of the referee, awarded disability indemnity from May 22, 1940, to July 16, 1940, at the rate of $8.55 a week, based on wages of $60 a month. On November 18, 1940, Miller petitioned to re-open the proceeding alleging that the amount of the award was based upon an erroneous computation, and that his disability continued after July 16, 1940. The petition to re-open came on for hearing on January 6, 1941,

before a second referee; and on March 3, 1941, the commission, confirming the report of the second referee, made an order amending its original findings and award, whereunder Miller was granted compensation at the rate of $20 a week, based on wages of $6.50 a day, working five days a week, from May 22, 1940, to February 5, 1941, and continuing thereafter until termination of disability or further order of the commission, less ten weeks during which Miller worked.

The grounds urged for the annulment of the order relate to the matter of increased compensation; and the first point made in this behalf is that prior to the making of the order the second referee did not read a transcript of the evidence taken before the first referee. Petitioner concedes, however, that all evidence adduced before the first referee as to Miller's earning capacity was introduced and received at the hearing before the second referee. In other words, as stated in petitioner's points and authorities (page 16) the amended award was based upon the "same evidence" and the "same facts" as the original award. It is apparent, therefore, that petitioner was in no way prejudiced by the fact that the second referee did not read a transcript of the evidence taken before the first referee, and that to have done so would have been an idle act, which the law does not require (Civil Code, sec. 3532), because the evidence being the same, no different factual situation would have been brought before him. In this regard the state of the record is essentially different from the one presented in *Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 42 Cal. App. (2d) 192 [108 Pac. (2d) 698], upon which petitioner strongly relies; also the one involved in *Deter* v. *Industrial Acc. Com.*, 45 Cal. App. (2d) 664 [116 Pac. (2d) 112]. Furthermore, it may be observed that during the lapse of two months the present proceeding remained open before the second referee, petitioner at no time suggested the reading of a transcript of the evidence taken at the first hearing or that the evidence there taken was any different from that produced at the second hearing.

Petitioner's second point is that "good cause" to re-open was not shown. (Sec. 5803, Labor Code.) The law is well settled, however, that the commission has power to rescind or amend its orders, decisions and awards within the

period of 245 weeks upon good cause appearing, without the necessity of any showing that the applicant's disability has recurred, increased, diminished or terminated (*Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 Pac. 195]; *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 91 Cal. App. 347 [266 Pac. 992]); and that while the power of the commission to change its former award may not be predicated upon a mere change of opinion by the commission, such power may be properly exercised where there exists some fact or circumstance not within the knowledge of the commission at the time of the making of the former award which warrants the conclusion that the challenged award is inequitable. (*Merritt-Chapman & Scott Corp.* v. *Industrial Acc. Com.*, 6 Cal. (2d) 314 [57 Pac. (2d) 501].)

Here the record shows that in making the original award the commission improperly used as the sole basis therefor the amount of wages *actually received* by Miller during the preceding year, rather than "the average weekly earning capacity of the injured employee at the time of his injury," as required by subdivision d of section 4453 of the Labor Code. That subdivision is as follows: "Where the employment is for less than thirty hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at ninety-five per cent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments." As will be noted, under the above provisions it is the average weekly earning capacity at the time of the injury which is the basis for determining average weekly earnings, which, in turn, provides the measure for computing the disability payment; and while it is doubtless the law that in determining the average weekly earning capacity at the time of the injury, due consideration is to be given to earnings in the past, such earnings are not the controlling factor in determining earning capacity. (*California C. I. Exchange* v. *Industrial Acc. Com.*, 135 Cal. App. 746 [27 Pac. (2d) 782]; *Aetna Life Ins. Co.* v. *Industrial Acc. Com.*, 130 Cal. App. 488 [20 Pac. (2d) 116].) In so construing the law the court in the former case went on to say (p. 750): "It is petitioner's [the insur-

ance carrier's] view that the employee is entitled to an award based solely on such earnings and that to determine 'average weekly earning capacity' necessitates a calculation whereby the total amount actually earned during the entire year is divided by 52. It is immediately apparent that this method of computation places upon an injured employee the entire risk of inability to secure employment without regard to his health, training, experience, or willingness to work.'' And later on, in commenting upon and adhering to the doctrine laid down in the Aetna case, the court said (p. 752): ''It was contended by the petitioner [in the Aetna case] that the average weekly earning capacity of the injured employee should be determined by ascertaining the average weekly wages which he actually received during the entire year previous to the time of his injury. It will be observed that this is precisely the same contention advanced by petitioner in the present proceeding. The contention did not prevail. The District Court of Appeal for the Third Appellate District affirmed the award. The following language which appears in the opinion of the court written by Justice Thompson is apropos to the problem here presented: 'The rule contended for by the petitioner would be unreasonable under some circumstances. It might result in grave injustice to a claimant. A workman may possess excellent earning ability and yet on account of temporary illness or other cause he may be prevented from working throughout a great portion of the year previous to his injury. Under such circumstances, an amount based only upon the average sum which he actually received during that year, regardless of the unusual conditions affecting his employment, would not fairly represent his earning capacity. We are of the opinion the language employed in paragraph (4) of section 12 of the Workmen's Compensation Act, which authorizes the acceptance of ''such sum as shall reasonably represent the *average weekly earning capacity* of the injured employee at the time of his injury'' should be construed to mean that the wages of the employee which were actually earned during the year, together with all the surrounding circumstances affecting his earning ability, should be considered in ascertaining a figure which will reasonably represent his weekly earning capacity. Capacity to earn money necessarily contemplates all the surrounding circumstances and conditions disclosed by the evi-

dence which may indicate one's usual and ordinary ability to earn wages, including his physical ability, his natural talents, his training, his opportunity to secure employment and the condition of his health.' '' It follows, therefore, that since the original award herein was based on an illegal rule of computation, it was within the power of the commission to re-open the proceeding on that ground.

In the petition for the writ of review it is alleged that at the hearing before the first referee it was stipulated by Larry Roche on behalf of Miller that Miller's "average earnings at the time of injury were $60.00 a month," and that "This stipulation was entered in the records of Respondent Industrial Accident Commission." However, those allegations are not supported by the record. It appears therefrom that throughout the first hearing, and up to the time the hearing began before the second referee, Miller was not represented by an attorney. Roche, a layman and the business agent of the union of which Miller was a member, was present with Miller at the first hearing, and the only witness who testified thereat was Miller. The entire direct examination was conducted by the referee and in response to one of the questions Miller stated that during the preceding year he earned between $650 and $700; whereupon the referee stated: "Wages stipulated $60 per month"; and the amount of the original award was computed on that basis. At the hearing before the second referee Miller was represented by an attorney, and Roche, testifying thereat as the first witness, positively denied having entered into any stipulation whatever on behalf of Miller.

 The third point urged for annulment of the order is that the evidence is insufficient to sustain the award as amended. The point is not sustainable. The evidence shows that when injured Miller was receiving a daily wage of $6.50, working five days a week as work was available, and the amended award was computed on that basis. He was hired through a hiring hall operated by the union to which he belonged, and such was the prevailing wage paid to men so hired to do the kind of work he was performing when injured. At the time Trollan hired Miller he contemplated the job would last three days, and it was on the third day that Miller was injured.

The argument made by petitioner in support of its position is based principally upon the evidence showing that during the year preceding the date of injury Miller was not steadily employed, and earned approximately only $700. But as stated by the court in *California C. I. Exchange* v. *Industrial Acc. Com., supra,* the Aetna case may be considered as "direct authority for the proposition that, in determining the average weekly *earning capacity* of an injured employee, the entire risk of inability to secure employment shall not be cast upon the employee and that the *actual earnings* received by him during the year preceding his injury shall not furnish the sole test for determining his *earning capacity*"; and continuing, the court said: "It must be conceded that neither the Aetna case nor any other decision to which our attention has been directed holds that inability to secure employment shall not be considered as one of the factors in determining earning capacity." (All italics ours.) The case of *Mahaffey* v. *Industrial Acc. Com.,* 176 Cal. 711 [171 Pac. 298], stressed by petitioner, is analyzed and differentiated in both of the cases above mentioned, and for the reasons stated therein we do not deem the Mahaffey case here controlling.

The order amending the original findings and award is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied November 24, 1941, and petitioner's application for a hearing by the Supreme Court was denied December 22, 1941.