[S. F. No. 22676. In Bank. Jan. 30, 1970.]

RUTH GOYTIA, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
CALIFORNIA PACKING CORPORATION, Respondents.

890

## COUNSEL

Morgan, Beauzay & Hammer and Robert T. Bledsoe for Petitioner.

Barry Satzman as Amicus Curiae on behalf of Petitioner.

Everett A. Corten, Jon L. Gateley, Edmund D. Leonard and Dawson B. Leonard for Respondents.

## OPINION

**TOBRINER, J.**—Petitioner seeks annulment of a decision after reconsideration by the Workmen's Compensation Appeals Board which reduced her award of permanent disability benefits. The appeals board, basing its determination upon her pre-injury earnings, rated petitioner's earning capacity for purposes of permanent disability as minimum. We cannot ascertain from the ambiguous decision of the board whether or not in so doing it considered such earning capacity of petitioner as disclosed by earnings subsequent to the injury; we believe that such consideration is required by the Workmen's Compensation Act. We must therefore annul the decision.

The petitioner, Ruth Goytia, sustained an injury to her right wrist and hand on April 15, 1966, while employed by the California Packing Corporation (now Del Monte Corporation). Prior to her injury petitioner had worked as a seasonal packing house worker for the California Packing Corporation for several years with sufficient earnings to entitle her only to the minimum compensation rate of $20 per week. Subsequent to her injury, in July 1967, petitioner obtained full-time, permanent employment at San Jose Hospital as a cashier, with earnings of approximately $81.90 per week. Her earnings on her full-time job sufficed to produce a compensation rate of $50.57 per week.

About one year later, on July 22, 1968, a referee for the appeals board held a hearing to determine the extent of petitioner's permanent disability

resulting from her 1966 injury. After a second hearing on November 7, 1968, the referee issued a rating of 15½ percent, and on December 11, 1968, he filed his supplemental findings and award, including a finding that petitioner's "earning capacity for purposes of permanent disability is $81.90 per week," awarding her permanent disability indemnity at the rate of $50.57 per week. In his opinion on decision the referee noted that prior to her injury petitioner's earnings had been minimum, but that her subsequent employment record had demonstrated an earning capacity equivalent to $81.90 per week for purposes of permanent disability.

The appeals board granted Del Monte's petition for reconsideration and thereafter annulled the referee's decision. The board found petitioner's earning capacity to be minimum and awarded her permanent disability indemnity at the rate of $20 per week. In its opinion the appeals board stated its reasoning: "We have carefully reviewed the record in this matter. Applicant was employed by Del Monte in its cannery operation. The evidence in the record is that applicant worked seasonably for about twenty years prior to the time of her injury. Following her industrial injury she remained off work for some time and then secured full-time employment because her children had grown older and no longer needed her attention. Section 4453(d) of the Labor Code provides that the average weekly earning capacity of the injured employee shall be determined at the time of his injury. At the time of her injury applicant's earnings were admittedly minimum. We are therefore granting reconsideration to annul the finding that earnings were at the maximum rate, to find applicant's earnings were at the minimum rate and to correct the award accordingly."

At the threshold we must meet the contention of the appeals board in its answer to the petition that its opinion shows that it had "carefully reviewed the record in this matter," that "the evidence considered by the Board included her [petitioner's] obtaining of 'full-time employment because her children had grown older and no longer needed her attention' " and that it had properly found applicant's earnings were at the minimum rate. The opinion, however, offers no such clear affirmation of the board's position but presents alternative possibilities, either of which is vulnerable.

The board's decision may rest upon the proposition that the *actual* earnings of applicant at the date of injury, and not her earning *capacity,* determine the rate, and that therefore "due consideration" to post-injury earnings need not be given. In that event, as we shall explain, the opinion misconceives Labor Code section 4453, subdivision (d). On the other hand, the opinion may represent the determination of the board, *after* its "due consideration" of post-injury earnings, that such earnings should be discarded as inconclusive. In that case, the board's cryptic pronouncement, as we shall show, violates section 5908.5 of the Labor Code, which requires

that the board ". . . state the evidence relied upon and specify in detail the reasons for the decision."

■ We first examine the second alternative. We repeat a proposition that this court has stated on numerous occasions: the board must observe the mandate of section 5908.5. *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753 [68 Cal.Rptr. 825, 441 P.2d 633], carefully explains that "Section 5908.5 of the Labor Code directs that 'Any *decision* of the appeals board *granting or denying* a petition for *reconsideration or affirming, rescinding, altering, or amending* the *original findings, order, decision, or award following reconsideration* shall be made by the appeals board and not by a referee and shall be in writing . . . and *shall state* the *evidence relied upon and specify in detail the reasons* for the decision.*' (Italics added.)" (P. 755.)

This court then set forth the rationale for its position: "The purpose of the requirement that evidence be stated and reasons detailed appears analogous to that of the requirement of section 1705 of the Public Utilities Code that decisions of the Public Utilities Commission contain separately stated findings of the basic facts upon all material issues. It is to assist the reviewing court to ascertain the principles relied upon by the lower tribunal, to help that tribunal avoid careless or arbitrary action, and to make the right of appeal or of seeking review more meaningful. (*Greyhound Lines, Inc.* v. *Public Utilities Com.* (1967) 65 Cal.2d 811, 813 . . . .)" (*Evans* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 753, 755.) *Evans* has been specifically applied to situations similar to the present one in *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 406 [71 Cal.Rptr. 678, 445 P.2d 294], and *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440-441 [71 Cal.Rptr. 684, 445 P.2d 300].

Indeed, the instant case symbolizes the vice of the neglect of the rule: in reading the narrative account of applicant's work history one cannot authoritatively tell whether the board did or did not give any consideration to the evidence of subsequent earnings. The board's conclusionary statement does not suffice to inform this court of its specific holding or the basis for it. It offers no scintilla of reason for refusing to fix the rate in accordance with petitioner's subsequent earnings, if it did give such earnings "due consideration," and such omission is the more flagrant in view of the statutory obligations of the board, which we discuss *infra.*

The alternative construction of the board's opinion, which appears to us the more likely, is that it decided that the actual earnings of the petitioner at the date of the injury determine the rate without regard to subsequent earnings. Thus the board states that "At the time of her injury applicant's earnings were admittedly minimum." That statement does not

mention petitioner's earning capacity at the time of injury. ▮ Yet section 4453, subdivision (d), fixes "the average weekly earning capacity" as the basis for determining permanent disability rating. Nevertheless, the board states that petitioner's earnings "at the time of her injury" being "admittedly minimum," it "therefore" grants "reconsideration to annul the finding" as to earnings.

▮ Earning capacity is not locked into a straitjacket of the actual earnings of the worker at the date of injury; the term contemplates his general over-all capability and productivity; the term envisages a dynamic, not a static, test and cannot be compressed into earnings at a given moment of time. The term does not cut "capacity" to the procrustean bed of the earnings at the date of injury. A comparison of the first three subdivisions of section 4453 with the fourth shows that the Legislature deliberately established earning capacity as the test for the fourth subdivision as distinguished from the actual earnings for the other three subdivisions. Section 4453 provides for the computation of both temporary and permanent disability indemnity. Subdivisions (a), (b), and (c)[1] relate to full-time employees, employees working for two or more employers, and employment at an irregular rate, such as piecework or work on a commission basis. Each of those subdivisions provide for computation of "average annual earnings for purposes of permanent disability indemnity" based upon earnings prior to the injury.

Section 4453, subdivision (d), applicable here, provides as follows: "Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earn-

---

[1] "In computing average annual earnings for the purposes of temporary disability indemnity only, the average weekly earnings shall be taken at not less than thirty-eight dollars and forty-six cents ($38.46) nor more than one hundred seven dollars and sixty-nine cents ($107.69). In computing average annual earnings for purposes of permanent disability indemnity, the average weekly earnings shall be taken at not less than thirty dollars and seventy-seven cents ($30.77) nor more than eighty dollars and seventy-seven cents ($80.77). Between these limits the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as follows: (a) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be 95 percent of the number of working days a week times the daily earnings at the time of the injury. (b) Where the employee is working for two or more employers at or about the time of the injury, the average weekly earnings shall be taken as 95 percent of the aggregate of such earnings from all employments computed in terms of one week; but the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury. (c) If the earnings are at an irregular rate, such as piecework, or on a commission basis, or are specified to be by the week, month or other period, then the average weekly earnings mentioned in subdivision (a) above shall be taken as 95 percent of the actual weekly earnings averaged for such a period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay." (§ 4453.)

ings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 95 percent of the sum which reasonably represents the average weekly *earning capacity* of the injured employee at the time of his injury, *due consideration* being given to his *actual earnings* from all sources and employments." (Italics added.)

■ The language of the statute leads to two conclusions: first, average weekly earnings under subdivision (d) differs from average weekly earnings under the other three subdivisions; subdivision (d) applies "where the employment is for less than 30 hours per week, *or* where for any reason the foregoing methods . . . cannot reasonably and fairly be applied." (Italics added.) Since the prior three subdivisions calculate average weekly earnings solely on the basis of prior earnings, the statute apparently contemplated that prior earnings are not the sole basis for the determination of earning capacity or average weekly earnings under subdivision (d).

■ Secondly, subdivision (d) states that in determining average weekly earning capacity the appeals board should give "due consideration" to actual earnings "from all sources and employments." Pre-injury earnings constitute one factor, but not the exclusive factor, in determining such earnings. The subdivision in alluding to earning "capacity" must necessarily refer to earning potential which may not, and probably will not, be reflected by prior part-time earnings.

In the important case of *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589 [21 Cal.Rptr. 545, 371 P.2d 281], sometimes referred to as the *Montana* case, this court has insisted upon a realistic appraisal of earnings under subdivision (d). There we consider the application of the subdivision in the case of an applicant, Montana, who prior to his injury had worked intermittently over a period of years as a construction laborer. We annulled an award of permanent disability based upon a finding of maximum earning capacity stemming solely from an unusually high wage which Montana happened to be earning at the time of injury. We stated that "An estimate of earning capacity is a prediction of what an employee's earnings would have been had he not been injured. . . . In making a permanent award, long-term earning history is a reliable guide in predicting earning capacity, although in a variety of fact situations *earning history alone may be misleading. . . . [A]ll facts relevant and helpful to making the estimate must be considered* [citations]. The applicant's ability to work, his age and health, his willingness and opportunities to work, his skill and education, the general condition of the labor market, and employment opportunities for persons similarly situated are all relevant." (Italics added.) (57 Cal.2d 589, 594-595.)

Although *Argonaut* did not involve the specific question we face here, whether the appeals board should consider post-injury earnings in award-

ing permanent disability, its language, emphasizing the importance of determining true earning capacity based upon "all facts relevant and helpful" and recognizing that "earning history alone may be misleading," indicates that post-injury earnings form a legitimate area for consideration in determining earning capacity. If, as in *Argonaut,* the board may reduce an appraisal of earning capacity based exclusively upon post-injury earnings because of the total history of the applicant, it must by the same token possess the corollary power to take into account immediately pre-injury earnings in order to increase its appraisal of such earning capacity. In equating capacity to earn with earnings at the time of injury, the board's construction substantially conflicts with the precept of *Argonaut.*

Other courts have applied the definition of earning capacity as used in subdivision (d). In *Colonial etc. Ins. Co.* v. *Industrial Acc. Com.* (1941) 47 Cal.App.2d 487 [118 P.2d 361], the Court of Appeal condemned the use of wages actually received during the preceding year as the sole basis for determining a temporary disability award. The court stated: "As will be noted, under the above provisions [section 4453, subdivision (d)] it is the average weekly earning capacity at the time of the injury which is the basis for determining average weekly earnings, which, in turn, provides the measure for computing the disability payment; and while it is doubtless the law that in determining the average weekly earning capacity at the time of the injury, due consideration is to be given to earnings in the past, such earnings are not the controlling factor in determining earning capacity" (47 Cal.App.2d 487, 490).

In *Colonial* the Court of Appeal quoted *Aetna Life Ins. Co.* v. *Industrial Acc. Com.* (1933) 130 Cal.App. 488, 491-492 [20 P.2d 372], and *California Cas. Indem. Exchange* v. *Industrial Acc. Com.* (1933) 135 Cal. App.746, 752 [27 P.2d 782], to the effect that " 'average weekly earning capacity . . . should be construed to mean that the wages of the employee which were actually earned during the year, together with all the surrounding circumstances affecting his earning ability, should be considered in ascertaining a figure which will reasonably represent his weekly earning capacity. Capacity to earn money necessarily contemplates all the surrounding circumstances and conditions disclosed by the evidence which may indicate one's usual and ordinary ability to earn wages, including his physical ability, his natural talents, his training, his opportunity to secure employment, and the condition of his health' " (47 Cal.App.2d 487, 491-492).

The appeals board itself has specifically interpreted subdivision (d) to permit consideration of post-injury earnings. In *Dole* v. *Industrial Acc. Com.* (1966) 31 Cal.Comp.Cases 41, writ denied, the employee, Pargaz, injured himself in 1963 while working as a part-time cannery worker.

Pargaz had previously worked from 1956 to 1959 full-time for another employer. From 1959 until his injury, however, he had worked sporadically, his highest annual earnings being $1,400 in 1963. The referee found that Pargaz's employment was seasonal and would have continued only four more weeks after his injury; he therefore awarded Pargaz temporary disability at $40 for four weeks and at the minimum rate of $25 thereafter.

By the time of the hearing on permanent disability in March of 1965, Pargaz had obtained full-time employment as a school custodian at a salary of $387 per month. Thereafter the referee awarded Pargaz permanent disability at the maximum rate based upon his post-injury earnings. The referee reported: "At the time of the industrial injury applicant was employed in seasonal employment, and his earnings during the year prior to the injury, during a portion of which time it is contended he was unable to work, would not support a compensation rate for permanent disability of maximum. However, subsequent to injury applicant secured steady employment at $387.00 per month. As he had sustained permanent disability before securing such employment, it is the Referee's opinion that if in such disabled condition, he was able to earn $387.00 per month, his earning capacity at the time of injury was undoubtedly no less than that." (31 Cal.Comp.Cases 41, 42.)

The board denied reconsideration. The employer sought a writ of review contending that the referee could not properly determine earning capacity at time of injury by reference to earnings from post-injury employment; therefore, Pargaz was entitled to compensation at the minimum rate. The Court of Appeal denied the writ.

Likewise, in *Esparza* v. *Regents of the University of California* (1966) 31 Cal.Comp.Cases 433, the appeals board considered potential future earnings in determining earning capacity. There the applicant, who expected to receive his master's degree within six months, suffered injuries while working part-time as a student research assistant. The board, on reconsideration, found that the applicant, but for the accident, would have received maximum earnings after he obtained his degree. The board, citing *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589, recognized its obligation to predict the applicant's earning capacity; therefore, it considered his training, employment opportunities in his field, and his willingness to work, and concluded that his earnings for purposes of permanent disability were maximum.

■ In the instant case petitioner worked part-time over a period of many years so that she could remain at home with her children. After her injury, however, when two children had married and the third had entered his last year of high school, she obtained full-time, permanent employment,

thus demonstrating her willingness and ability to work at a job which would justify more than minimum benefits. The conditions which led petitioner to work only part-time, thereby limiting her earnings, had ceased to exist. Accordingly, in making its determination of her permanent disability award, the appeals board should have examined all of the relevant facts, including petitioner's earning capacity as demonstrated by her ability to hold a full-time, permanent job. In the words of the referee in *Dole* v. *Industrial Acc. Com., supra,* 31 Cal.Comp.Cases 41, 42: "[I]f in such disabled condition, . . . [she] was able to earn . . . [$82 per week] . . . [her] earning capacity at the time of injury was undoubtedly no less than that."

■ We conclude that we cannot support the board on either of its projected hypotheses. If, under Labor Code section 4453, subdivision (d), it gave "due consideration" to petitioner's post-injury earnings, it has failed to explain why it disregarded such earnings, thereby violating section 5908.5 of the Labor Code. If it based its decision solely upon petitioner's actual earnings at the date of injury, refusing to give "due consideration" to a showing of her earning capacity by means of her post-injury earnings, it has not followed the precept of subdivision (d), as demonstrated by logical construction and supporting decisions.

The decision of the Workmen's Compensation Appeals Board is annulled and the case is remanded to that board for further proceedings consistent with the views herein expressed.

Peters, J., Mosk, J., and Sullivan, J., concurred.

**TRAYNOR, C. J.**—I dissent.

The court annuls the award in this case on the ground that the decision of the board is ambiguous in failing to set forth the evidence relied on and the reason for the decision, thus leaving open the possibility that the board did not give "due consideration" to post-injury earnings but based the compensation rate solely on the applicant's actual earnings at the time of her injury rather than her earning capacity. Although the board's decision might well have been more explicit, I do not agree that the award must be annulled. Nor do I agree that in this case the board must consider post-injury earnings. There is no evidence that the applicant ever sought employment on other than a part-time seasonal basis prior to her injury. It is therefore my opinion that evidence of post-injury earnings from full-time employment is irrelevant to a determination of earning capacity at the time of the injury.

The applicant concedes that her employment history before her injury would not support an award above the minimum compensation rate. The

court's holding herein that the board must give "due consideration" to post-injury earnings in the circumstances of this case includes by necessary implication a holding that the board could properly award compensation above the minimum if, after consideration of post-injury earnings, it determined that the applicant's earning capacity at the time of the injury was greater than that demonstrated by her pre-injury work history.

The court's construction of Labor Code section 4453, subdivision (d), appears to me to be inconsistent not only with the language of the section but with our decision in *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589 [21 Cal.Rptr. 545, 371 P.2d 281]. Furthermore, it invites injured employees with a history of seasonal or part-time employment to accept full-time employment prior to the hearing before the referee in order to obtain a possible windfall at the expense of the carrier.

The purpose of subdivision (d) is "to equalize for compensation purposes the position of the full-time, regularly employed worker whose earning capacity is merely a multiple of his daily wage and that of the worker whose wage at the time of the injury *may be aberrant or otherwise a distorted basis* for estimating true earning power." (*Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589, 594.) (Italics added.) Thus, when a regularly employed worker for reasons beyond his control, such as illness, strikes, lay offs, temporary recession, or other factors affecting the opportunity for full-time employment in his customary occupation, is receiving a wage at the time of his injury that does not fairly reflect his earning capacity as suggested by his work history, subdivision (d) permits the board to consider that history and other relevant information in determining his earning capacity. Conversely, as we held in *Argonaut,* if at the time of his injury the worker is employed full-time as a permanent employee, but his work history establishes that he has had irregular employment at low wages over a long period of time and the current employment is only for the duration of a particular job, it is inconsistent with the purpose of the statute to base a permanent disability award solely on the high wage he is fortuitously earning at the time of the injury. (57 Cal.2d 589, 594.)

The present case should be governed by these rules. If an award may not be based solely on a high wage fortuitously being earned at the time of an injury when there is a history of irregular, part-time work because the wage at the time of the injury is aberrant, it follows that where there is *no* evidence of willingness to accept other than seasonal or part-time work prior to the injury, earning capacity at the time of the injury cannot properly be determined on the basis of post-injury earnings from full-time employment in another occupation. An applicant's willingness and opportunities to work are relevant to his earning capacity. (*Argonaut Ins. Co.* v. *Industrial Acc.*

*Com., supra,* 57 Cal.2d 589, 595.) A worker who is not available for full-time regular work or who chooses to work seasonally limits his own earning capacity voluntarily by his unwillingness to work when opportunities to do so are available.

Subdivision (d) of Labor Code section 4453 requires that the average weekly earnings "be taken at 95 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee *at the time of his injury. . . .*" (Italics added.) Post-injury earnings of an employee who became willing to accept full-time work only after the injury are not relevant to his earning capacity at the time of the injury when his willingness and availability were subject to self-imposed limitations. The cases on which the majority opinion relies for the proposition that post-injury earnings may be considered were not concerned with post-injury earnings, but with factors other than actual earnings existing at the time of the injury. In *Colonial etc. Ins. Co.* v. *Industrial Acc. Com.* (1941) 47 Cal.App.2d 487 [118 P.2d 361], *California Cas. Indem. Exchange* v. *Industrial Acc. Com.* (1933) 135 Cal.App. 746 [27 P.2d 782], and *Aetna Life Ins. Co.* v. *Industrial Acc. Com.* (1933) 130 Cal.App. 488 [20 P.2d 372], the question was the earning capacity of an employee whose earnings during the year prior to his injury had been low as a result of temporary illness or other cause that prevented his working during that year, but whose work history demonstrated that he possesed a significantly greater earning capacity. In the *Colonial* case the court adopted the reasoning of the two earlier cases that in such circumstances "an amount based only upon the average sum which he actually received during that year, regardless of the *unusual* conditions affecting his employment would not fairly represent his earning capacity." (47 Cal.App.2d 487, 491. Italics added.) I agree with that reasoning and with the result in those cases. The holdings are entirely consistent with section 4453, subdivision (d), and with *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589. The court's extension of those cases to encompass post-injury earnings in addition to factors existing at the time of the injury is unwarranted. Nothing in those cases suggests that the court contemplated consideration of circumstances subsequent to the injury in determining earning capacity. Neither those cases, nor *Argonaut,* are authority for the court's holding herein.

Finally, *Dole* v. *Industrial Acc. Com.* (1966) 31 Cal. Comp. Cases 41, is distinguishable from the present case. The referee's report and recommendation on reconsideration in that case notes that the employee had held full-time employment for a three-year period followed by four years of sporadic employment immediately prior to the injury. He had been discharged from the full-time employment because of wage attachments. His

employment at the time of the injury was seasonal and his earnings would not support a maximum award. He contended that he was unable to work for a part of the year prior to his injury. "Subsequent to injury applicant secured steady employment at $387.00 per month. As he had sustained permanent disability before securing such employment, it is the Referee's opinion that if in such disabled condition he was able to earn $387.00 per month, his earning capacity at the time of injury was undoubtedly no less than that." (31 Cal. Comp. Cases 41, 42.) There is no showing regarding the reason the worker engaged in seasonal employment over a four-year period. It is a permissible inference that he was unskilled and unable to obtain full-time work. Furthermore, he may have been prevented by health from obtaining full-time work. In sum, the case does not stand for the proposition that a worker who is voluntarily unavailable for work except on a seasonal basis for over 20 years is entitled to a maximum award because he obtained full-time employment for the first time in his life after the injury. *Esparza* v. *Regents of the University of California* (1966) 31 Cal. Comp. Cases 433, is similarly distinguishable. The board there took into consideration the willingness of the employee, who was a student, to work. He had worked part-time during the semester and full-time during his vacation. That the Legislature contemplated application of a standard acknowledging intent to obtain full-time employment in the future for students is apparent from section 4455 of the Labor Code,[1] which requires that a permanent disability award to a minor reflect the earnings he probably would have received at age 21. It is obvious that different policy considerations apply to minors and students who because of age and the necessity to complete their formal education cannot undertake full-time employment.

Post-injury earnings may be relevant to the determination of earning capacity in some circumstances. If an employee offers evidence that he was actively seeking full-time employment or employment at a higher wage when he was injured, the fact that he later obtains such employment is relevant to establishing his competency to fill the desired position. Here, however, the applicant had worked seasonally as a cannery worker for more than 20 years prior to the injury. Only once had she sought other employment. In 1958 she was self-employed as an agent for a dry cleaner,

---

[1]"If the injured employee is under 21 years of age, and his incapacity is permanent, his average weekly earnings shall be deemed, within the limits fixed in Section 4453, to be the weekly sum which under ordinary circumstances he would probably be able to earn at the age of 21 years, in the occupation in which he was employed at the time of the injury or in any occupation to which he would reasonably have been promoted if he had not been injured. If such probable earnings at the age of 21 years cannot reasonably be determined, his average weekly earnings shall be taken at eighty dollars and seventy-seven cents ($80.77.)"

but returned to seasonal cannery work because her earnings were not enough. Throughout the balance of her employment career, from 1937 to the time of the injury in 1966, she chose to work on a seasonal basis. There is no evidence in the record from which it can be inferred that in 1966 the applicant was willing and able to accept full-time employment in her post-injury occupation or any other. Therefore, her post-injury earnings are in no way relevant to her earning capacity at the time of the injury.

No purpose would be served by annulling the award to permit the board to prepare a decision with recitals of evidence and reasons for the decision. There is no evidence upon which an award above the minimum could be sustained.

I would affirm the award.

McComb, J., and Burke, J., concurred.

Respondents' petitions for a rehearing were denied February 25, 1970, and the opinion was modified to read as printed above. McComb, J., and Burke, J., were of the opinion that the petition should be granted.