783 P.2d 830

Timothy N. RASMUSSEN,
Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Boy Scouts of America,
Respondent Employer,

State Compensation Fund,
Respondent Carrier.

No. 2 CA–IC 89–0019.

Court of Appeals of Arizona,
Division 2, Department B.

Nov. 16, 1989.

Dee–Dee Samet, Tucson, for petitioner employee.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Christopher E. Kamper, Chief Counsel, State Compensation Fund by Fred R. Sands, Tucson, for respondent employer and respondent carrier.

## OPINION

LIVERMORE, Presiding Judge.

At age 16, petitioner Timothy Rasmussen injured his left knee while working as an archery instructor at a Boy Scout camp. His claim for workers' compensation benefits was accepted and he underwent reconstructive surgery. Two years after his claim was closed it was reopened to permit additional reconstructive surgery. After finding that Rasmussen suffered a 17 percent functional loss of the left leg, the Industrial Commission set his average monthly wage at $99.

Rasmussen protested the amount of his average monthly wage and a hearing was held. At the hearing, Rasmussen testified that he was to work at the Boy Scout camp for twelve weeks as an archery counselor. He also testified that during the school year he worked weekends and afternoons at a landfill, and that he worked a couple of months at a gas station in the evenings. After leaving school he worked 40 hours per week at the landfill, earning $900 per month.

Testimony was also heard from two labor market consultants. Jeffrey Wesley testified that the skills Rasmussen possessed as an archery instructor were transferable to a job as state park attendant paying $1,083.58 per month or as an instructional aide paying $670.18 per month. Karen Miller testified that the only job available to Rasmussen as an archery instructor was seasonal, and that at the age of 18 he could have earned no more than $90 per week as an archery range instructor, the position he could logically be promoted to, plus $35 per week for meals and $7 per week for lodging. The administrative law judge adopted the testimony of Karen Miller as being most probably correct and well-founded and ordered that all compensation benefits to which Rasmussen is or may be entitled be based on an average monthly wage of $132. This figure was arrived at by treating Rasmussen as being employed for 12 weeks of the year at $132 per week and being unemployed for the remainder of the year. The decision was affirmed upon review and this special action followed.

The average monthly wage is the basis upon which benefits are measured. Here the conflict revolves around the interpretation of A.R.S. § 23–1042, which provides the basis for computing the average monthly wage of a permanently disabled minor. Section 23–1042 provides:

If it is established by competent evidence that an injured employee is under eighteen years of age and his incapacity is permanent, his average monthly earning capacity shall be deemed, within the limits fixed by §§ 23–1041 and 23–1046, to be the monthly amount which under ordinary circumstances he would probably be able to earn at the age of eighteen years in the occupation in which he was employed at the time of injury, or in any occupation to which he would reasonably have been promoted if he had not been injured. If the probable earnings at the age of eighteen years cannot be reasonably determined, his average earnings shall be based upon $4.00 per day for a six-day week.

Respondent State Compensation Fund argues that the plain language of § 23–1042 precludes consideration of any probable earnings at age 18 other than those in the occupation in which he was employed at the time of injury (i.e. archery counselor) or in any occupation in which he would reasonably be promoted (i.e. archery range director). Petitioner urges that this interpretation is inconsistent with case law applicable to adults and with the spirit and purpose of the workers' compensation scheme.

The primary principle of statutory construction is that the intent of the legislature be determined by looking at such factors as the language, other statutes *in pari materia*, consequences of alternative constructions, and the spirit and purpose of the law. *Martin v. Martin*, 156 Ariz. 452, 752 P.2d 1038 (1988); *Kasprowiz v. Industrial Commission*, 14 Ariz.App. 75, 480

P.2d 992 (1971). Two other principles apply here. First, we are bound to avoid a construction which would render the statute absurd and instead must construe it so that it is reasonable and workable. *Perez v. Maricopa County*, 158 Ariz. 40, 760 P.2d 1089 (App.1988). Second, it has long been held that Arizona's workers' compensation statutes are to be liberally construed in favor of the worker and so as to effectuate their remedial purpose. *Fremont Indemnity Co. v. Industrial Commission*, 144 Ariz. 339, 697 P.2d 1089 (1985); *Beasley v. Industrial Commission*, 108 Ariz. 391, 499 P.2d 106 (1972).

The clear purpose of § 23–1042 is to provide a means not otherwise available for adjusting the earning capacity of an injured minor to reflect what he or she would probably have earned at the age of majority. *Beasley v. Industrial Commission*, 108 Ariz. 391, 499 P.2d 106 (1972); *Maricopa County Neighborhood Youth Corps. v. Industrial Commission*, 26 Ariz.App. 350, 548 P.2d 844 (1976); 2 Larson, Workmen's Compensation Law § 60.12 (1989).

> The legislature, by enacting A.R.S. § 23–1042, recognized that a minor claimant undergoes a "change of condition" between the time of the award and the date he reaches majority, and by virtue of this statute it is mandatory upon the Commission to determine the extent to which a particular minor claimant will undergo such a change of conditions, and reflect this determination in its initial award.

*Herman v. Industrial Commission*, 100 Ariz. 312, 315–316, 414 P.2d 134, 136 (1966). By providing for the projection of future earning capacity, the legislature inherently recognized that minors who are permanently injured in the course of their employment should not be penalized simply because age and the necessity of completing their formal education kept them out of the full-time work force. *See Goytia v. Workmen's Compensation Appeals Board*, 1 Cal.3d 889, 83 Cal.Rptr. 591, 464 P.2d 47 (1970) (Traynor, C. J., dissenting).

In view of the legislative intent, it is our opinion that the interpretation urged by respondents is entirely too narrow. The statute specifically provides that the "average monthly earning capacity shall be deemed within the limits fixed by §§ 23–1041 and 23–1046, to be the monthly amount which under ordinary circumstances he would probably be able to earn at the age of eighteen years in the occupation in which he was employed at the time of injury, or in any occupation to which he would reasonably have been promoted...." We note first that § 23–1042 provides the basis for determining "average monthly earning capacity," as opposed to "average monthly wage" as provided in § 23–1041 pertaining to adults. This choice of language would appear to recognize that although the average monthly wage of an adult is indicative of his earning capacity, it simply is not indicative of the earning capacity of a minor whose employment opportunities are more often than not confined to after-school hours, weekends, and summers.

Second, § 23–1042 is conspicuously silent on the subject of the wage calculation for a minor who is employed in seasonal work. It certainly does not mandate that the administrative law judge adjust the wage downward, as he did in this case, by using a 12–month period as a divisor to reflect the seasonal nature of the work. It does, however, require that the average monthly earning capacity of a minor be set "within the limits fixed by §§ 23–1041 and 23–1046." To that purpose we must look to § 23–1041 and the case law which has developed around it. On point is *LaRue v. Industrial Commission*, 158 Ariz. 205, 206, 761 P.2d 1109, 1110 (App.1988), in which we held that simply because an employee is injured while doing seasonal work, "he should not be treated as unemployed whenever that seasonal work is unavailable if his employment record or common sense indicates that he would be employed in other work during the off season." This rule is consistent with the purpose of § 23–1042 to project the future earning capacity of a minor so as to fairly compensate him for his injuries. Here petitioner's work record clearly indicates that when not employed as an archery counsel-

or, he would have been employed elsewhere. He therefore has the capacity to earn over the entire year and his average monthly wage should reflect this.

For the reasons set forth above, the award of the administrative law judge setting petitioner's average monthly wage at $132 is set aside.

FERNANDEZ, C.J., and HATHAWAY, J., concur.