[No. C029015. Third Dist. Dec. 22, 1998.]

CONNIE GONZALES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
HUNT-WESSON, INC., Respondents.

**COUNSEL**

Phillip N. Bruce for Petitioner.

Thomas, Salter & Lyding and Douglas E. Starns for Respondent Hunt-Wesson, Inc.

**OPINION**

**DAVIS, J.**—The Workers' Compensation Appeals Board (the Board) adopted the findings of its referee that Connie Gonzales is not entitled to temporary total disability payments after the date of her scheduled retirement. She petitioned this court for a writ of review of the board's decision

on this narrow legal issue. We issued the writ. After plenary review of the matter, we shall affirm the decision.

The pertinent facts are undisputed. The petitioner experienced a work-related injury to her right big toe in May 1995. She eventually underwent surgery in June 1997. The respondent paid all temporary disability benefits to which she was entitled through August 10, 1997, her 65th birthday and the date on which she had intended to retire. (Although the referee's findings do not explicitly articulate which type of benefits are at issue, we assume she was receiving temporary total disability payments based on the statute cited in the findings.)

The petitioner submitted the question of her right to temporary disability benefits after August 10, 1997, to the Board's referee on her points and authorities. She stipulated she did not have any plans to look for work elsewhere once retired from the employ of Hunt-Wesson, Inc.

The referee issued a report finding the petitioner's average weekly earnings for purposes of temporary disability were zero after August 10. The petitioner filed for reconsideration. The referee added nothing new in his recommendation against reconsideration. The Board adopted the referee's rationale and denied reconsideration, specifically noting her stipulation that she did not intend to seek work elsewhere after retirement.

## DISCUSSION

■ If an injury causes temporary total disability, ". . . the disability payment is two-thirds of the *average weekly earnings during the period of such disability*, consideration being given to the ability of the injured employee to compete in [the] . . . market." (Lab. Code, § 4653 [undesignated section references are to this code], italics added.)

"Average weekly earnings" are determined for both temporary and permanent disability payments according to various provisions of section 4453. Regardless of which provision is applicable, the ultimate concern is earning capacity. (*West* v. *Industrial Acc. Com.* (1947) 79 Cal.App.2d 711, 722 [180 P.2d 972] [earning capacity is "touchstone" in determining average earnings].)

The first three statutory methods are formulae which take a worker's actual earnings as their starting point, although these methods are valid only to the extent they truly reflect actual earning capacity at the time of injury. (*Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 894 [83

Cal.Rptr. 591, 464 P.2d 47]; *West* v. *Industrial Acc. Com., supra*, 79 Cal.App.2d at p. 722.) The fourth category is for irregular employment or other situations where the three formulae do not yield a fair result, and requires an estimate of earning capacity from all relevant circumstances, not just past earning history. (*Goytia, supra*, 1 Cal.3d at pp. 894-895; *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 594-595 [21 Cal.Rptr. 545, 371 P.2d 281].)

The elements of earning capacity include ability to work, willingness to work, and opportunity to work. In assessing these elements, the Board may rely on its general knowledge. (*Argonaut Ins. Co.* v. *Industrial Acc. Com., supra*, 57 Cal.2d at p. 595; *West* v. *Industrial Acc. Com., supra*, 79 Cal.App.2d at p. 722.)

■ In determining the amount of benefit, there is an important distinction in purpose between temporary and permanent disability. The former is intended "primarily to substitute for the worker's lost wages, in order to maintain a steady stream of income," while the latter "has a dual function: to compensate both for actual incapacity to work and for physical impairment of the worker's body . . . ." (*J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 333 [200 Cal.Rptr. 219]; accord, *Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328].) Thus, in making an award for temporary disability, the focus is on "whether an applicant would have *continued working at a given wage* for the duration of the disability." (*Argonaut Ins. Co.* v. *Industrial Acc. Com., supra*, 57 Cal.2d at p. 595, italics added.)

Even if the injured worker is entitled to temporary disability benefits at a particular rate based on earning capacity, there will not be an award if there is no evidence the worker actually suffered a wage loss. Thus, where an employer pays the injured worker wages equal to or in excess of the determined benefits, there is no award.[1] (*Herrera* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 258-259 [78 Cal.Rptr. 497, 455 P.2d 425]; *Cone* v. *Zack's Pasta Kitchen* (1988) 53 Cal.Comp.Cases 251, 256, decision en banc; § 3754.)

That a worker retires after sustaining a job-related injury should not cause any radical departure from these general principles. Our touchstone is still earning capacity.

■ In our view, the decision to retire implicates the element of "willingness to work" in the earning capacity calculus, and the primary factual

---

[1]However, the payment of retirement benefits cannot satisfy an employer's obligation for workers' compensation benefits. (*City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 775 [106 Cal.Rptr. 569]; §§ 3751, 3752).

component of the analysis must be whether the worker is retiring for all purposes, or only from the particular employment. (See *Van Voorhis* v. *Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 81, 90 [112 Cal.Rptr. 208] ["matter of common knowledge" people often work at other jobs after retirement].) If the former, then the worker cannot be said to be willing to work, and earnings capacity would be zero. If the latter, then it would be necessary to determine an earning capacity from all the evidence available. A subsidiary question is whether the decision to retire is a function of the job-related injury. If the injury causes the worker to retire for all purposes or interferes with plans to continue working elsewhere, then the worker cannot be said to be unwilling to work and would have an earning capacity diminished by the injury. Thus, the worker may establish by preponderance of the evidence an intent to pursue other work interrupted by the job-related injury. (§§ 3202.5, 5705; cf. *West* v. *Industrial Acc. Com.*, *supra*, 79 Cal.App.2d at p. 726 [burden on worker to explain reason for periods of unemployment].)

Other than a broad dictum that "a retired employee may obtain temporary disability indemnity" (*Chavira* v. *Worker's Comp. Appeals Bd.* (1991) 235 Cal.App.3d 463, 473 [286 Cal.Rptr. 600] [the case otherwise involves only the limitations period for progressive diseases]), the parties have not cited any California judicial authority on this issue, nor have we encountered any in our research. There are, however, a scattering of Board cases which are in accordance with our view of the issue of the effect of retirement. In *Laughlin* v. *Workers' Comp. Appeals Bd.* (1979) 44 Cal.Comp.Cases 361, the summary of the panel's decision indicates the worker had retired and then suffered a work-related heart attack; because there was no evidence the worker had ever manifested an interest in working after retirement, the board denied temporary total disability benefits because he had removed himself from the job market so there was no loss in earning capacity. *Soby* v. *Workmen's Comp. Appeals Bd.* (1974) 39 Cal.Comp.Cases 35 is in accord. Again, the summary of the panel's decision notes the worker suffered a job-related heart attack after retirement. In determining the level of partial permanent disability benefits, the Board based them on minimum earnings because the worker had completely removed himself from the job market for reasons unrelated to the injury. In *Davis* v. *Workmen's Comp. Appeals Bd.* (1975) 40 Cal.Comp.Cases 696, the summarized referee's decision denied temporary total disability benefits to a worker cleared for return to light duties but who chose to retire instead, finding she had removed herself voluntarily from the job market. In contrast, an employee forced to retire by reason of a work-related injury who testified she had intended to continue to work part-time after retirement from her current employer was entitled to temporary total disability benefits after her

retirement. (*University ofSouthern California* v. *Workers' Comp. Appeals Bd.* (1983) 48 Cal.Comp.Cases 477.)

This also appears to be generally consistent with the law in other jurisdictions, allowing for the variation in statutory workers' compensation schemes. (4 Larson, Workers' Compensation Law (1998) § 57.64(b), pp. 10-492.37 to 10-492.43.) For example, in Washington, which like California focuses on loss in earning capacity in setting temporary disability benefits, the court of appeals followed decisions from New York, Oregon, and Rhode Island in concluding a worker voluntarily retiring for reasons unrelated to the industrial injury surrenders the capacity to earn and thus is not entitled to benefits. (*Kaiser Aluminum & Chem. Corp.* v. *Overdorff* (1990) 57 Wn.App. 291, 294-297 [788 P.2d 8].)[2]

In support of her entitlement to temporary disability payments after retirement, the petitioner cites *MacDonald* v. *Western Asbestos Co.* (1982) 47 Cal.Comp.Cases 365, a decision in bank by the Board in which it held a worker whose asbestosis first manifested itself after retirement was entitled to minimum temporary total disability payments (presumably because his condition continued to deteriorate without stabilizing) despite evidence he had never intended to work after retirement. The Board disagreed with the conclusion in *Laughlin* v. *Workers' Comp. Appeals Bd.*, *supra*, 44 Cal.Comp.Cases 361, as taking a "narrow view of the concept of temporary disability indemnity." (47 Cal.Comp.Cases at p. 366.)

With all due respect to the Board's expertise in the arena of workers' compensation, we must disagree with its interpretation in *MacDonald* of its governing statutes, a question of law ultimately for this court. (*State Compensations Ins. Fund* v. *Brown* (1995) 32 Cal.App.4th 188, 199 [38 Cal.Rptr.2d 98]; *Western Electric Co.* v. *Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 629, 644 [160 Cal.Rptr. 436].) As the Board itself has noted more recently, *MacDonald* was concerned with the employer enjoying a windfall because of the long latency period for asbestosis (*Cone* v. *Zack's Pasta Kitchen*, *supra*, 53 Cal.Comp.Cases at p. 256), which also means an employee retires without knowledge of being at risk for the consequences of the insidious disease. This concern is not present in the case at bar. Moreover, at the time of *MacDonald*, section 4453 had a minimum level of temporary disability benefits regardless of the actual earnings of a worker, which is no longer true. Finally, *MacDonald* ignores the "willingness to work" element of earning capacity as established in judicial decisions. An

---

[2]The Washington Legislature had already acted to bar voluntary retirees from temporary disability benefits, but the case arose before the enactment of the statute. (57 Wn.App. at pp. 293-294 [788 P.2d at p. 9].)

employee unwilling to work cannot be deemed to have an earning capacity. (See *West* v. *Industrial Acc. Com.*, *supra*, 79 Cal.App.2d at p. 726.)

Based on the foregoing, we concur with the decision of the referee adopted by the Board. The petitioner unequivocally denied any interest in further employment of any sort after her retirement date. She therefore did not have an earning capacity after that date, so the Board properly set her benefits at zero.[3]

DISPOSITION

The decision of the Board is affirmed.

Sims, Acting P. J., and Puglia, J.,* concurred.

A petition for a rehearing was denied January 21, 1999, and the opinion was modified to read as printed above. Petitioner's application for review by the Supreme Court was denied April 14, 1999. Mosk, J., and Kennard, J., were of the opinion that the application should be granted.

---

[3]The petitioner argued in her reply brief for the first time in the course of this matter that section 4453, subdivision (d), precluded any reduction in her temporary total disability payments for the duration of her disability, regardless of any changes in her earning capacity. (E.g., *Grossmont Hospital* v. *Workers' Comp. Appels Bd.* (1997) 59 Cal.App.4th 1348, 1358-1362 [69 Cal.Rptr.2d 842].) However, as she failed to raise this argument in her petition for rehearing before the Board, she is precluded from pursuing it here. (§ 5904; *U.S. Auto Stores* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 476, 477 [93 Cal.Rptr. 575, 482 P.2d 199].)

*Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.