[No. C053016. Third Dist. Feb. 27, 2007.]

COUNTY OF SAN JOAQUIN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and JAMES DAVIS,
Respondents.

**COUNSEL**

D'Andre, Peterson, Bobus & Bruscino and James E. Bruscino for Petitioner.

Frailing, Rockwell & Kelly and John B. Frailing for Respondent James Davis.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**BLEASE, Acting P. J.**—The County of San Joaquin (County) petitions this court for a writ of review of the Workers' Compensation Appeals Board's (Board) decision that James Davis (Davis) is a maximum wage earner for purposes of calculating his temporary and permanent disability indemnity benefits.

Davis was employed by the State Compensation Insurance Fund (State Fund) as an attorney and paid a monthly salary of $7,299. While employed there, he was called for jury duty by the County, which paid jurors $5.00 a day for jury service. On his first and only day of jury duty, Davis sustained an admitted industrial injury to his lower back. He returned to work at State Fund and continued to work there, suffering ongoing back pain. Upon his application for temporary and permanent disability benefits, the Board calculated his "average weekly earnings" based upon his salary at State Fund, which entitled him to receive compensation at the maximum rate of pay.

The County contends the Board erred in concluding Davis is entitled to maximum rate benefits, arguing that the rate of pay is governed by Labor Code section 4453, subdivision (c)(2).[1] That provision limits the injured worker's "average weekly earnings" to the hourly rate received from the employer where the injury occurred. If that provision is applicable, Davis's indemnity benefits would be calculated at the minimum rate based upon the nominal juror fee paid by the County.

We find that provision is inapplicable however and conclude the Board properly determined that section 4453, subdivision (c)(4) (hereafter subdivision (c)(4)) sets forth the proper method for determining Davis's average weekly earnings. Subdivision (c)(4) provides that "[w]here the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments."

This case is a prime example of one calling for application of subdivision (c)(4). We shall therefore affirm the Board's decision, order, and award.[2]

---

[1] All further section references are to the Labor Code unless otherwise specified.

[2] Pursuant to Davis's concession at oral argument, we deny his request to remand the cause to the Board for an award of attorney fees pursuant to section 5801.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed. Fifty-five-year-old Davis was employed as an attorney at State Fund and paid a monthly salary of $7,299. While employed there, he was called for jury duty by the County. He reported for duty at 8:30 a.m. on November 15, 2000, where he sustained an admitted industrial injury to his lower back. He remained on duty until 11:30 a.m. and returned to work at the State Fund later that day. The County paid its jurors $5 per day for jury service and sent Davis a check for that amount, which he turned over to the State Fund as required. (Code Civ. Proc., § 215.) Davis continued to have back problems, underwent back surgery in early 2001, and returned to work at State Fund while continuing to receive treatment for back pain.

Davis filed a claim against the County (STK164337) for the injury to his lower back on November 15, 2000, and a claim against State Fund (STK164334) for cumulative trauma to his lower back through April 2, 2002.

The matter went to trial and after several hearings and reconsideration, the workers' compensation judge (WCJ) issued amended findings, award and order, determining that Davis was temporarily totally disabled from January 16, 2001, to March 17, 2001, that at the time of injury, he earned $5.00 a day for jury service and $7,299 a month for his work at State Fund, which produced a maximum temporary disability rate of $490.00 per week and a maximum permanent disability rate of $170.00 per week. (See §§ 4453, subd. (a)(7), 4653.)[3] In the opinion on decision, the WCJ concluded that Davis should be paid the maximum wage under subdivision (c)(4).

Both parties filed petitions for reconsideration. The County claimed, inter alia, that the Board erred by finding Davis was a maximum wage earner for purposes of calculating his benefits because on the day he was injured, he worked for the County which paid him $5.00 per day. As to that claim, the Board denied the County's petition, adopting and incorporating the WCJ's report and recommendation, in which she reaffirmed her decision that Davis was a maximum wage earner at the time of his injury. In so doing, the WCJ stated as follows, "I can't think of anything more unreasonable and more unfair and more inconsistent with the reasoning of all relevant case law on this issue than to ignore Mr. Davis' earnings capacity as an attorney for [State Fund] and limit him to the nominal $5 daily stipend for calculation of his [average weekly earnings]."

---

[3] Davis was awarded a total benefit of $44,030 for permanent disability less credits and specified attorney fees and reimbursement for items not here relevant. The County was ordered to pay 90 percent of the award and State Fund was ordered to pay 10 percent.

On June 30, 2006, the County filed a petition for writ of review in this court (Cal. Const., art. XIV, § 4; §§ 5950, 5955) challenging the Board's determination that Davis is entitled to be paid at the maximum disability rate.[4]

## DISCUSSION

## I.

## Standard of Review

Our review of the Board's decision upon a petition for writ of review is governed by section 5952. In conducting that review, we may consider whether the Board acted without or in excess of its powers, whether its order, decision, or award was unreasonable or unsupported by substantial evidence, and whether the findings of fact support the order, decision, or award. (§ 5952.) In reviewing questions of fact, we determine whether there is substantial evidence to support the Board's action unless its findings are unreasonable, illogical, improbable or inequitable in light of the overall statutory scheme. In reviewing questions of law, we review the Board's determination de novo. (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 535–536 [94 Cal.Rptr.2d 186].)

The question raised by the County, whether section 4453, subdivision (c)(2) rather than subdivision (c)(4) is the applicable method in determining Davis's "average weekly earnings," is a question of law. The County does not claim the Board's order is unsupported by substantial evidence or that the evidence is insufficient to support the Board's findings of fact.

## II.

## Maximum Rate of Pay

■ Disability payments for temporary total disability and for permanent partial disability are computed at two-thirds of the worker's "average weekly earnings." (§§ 4453, subd. (b), 4653, 4658; *Gonzales v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 843, 846 [81 Cal.Rptr.2d 54]; see 1 Herlick, Cal. Workers' Compensation Law (6th ed. 2000) § 5.01.) "Average

---

[4] State Fund does not seek review of the Board's decision.

weekly earnings" are determined under the provisions of section 4453,[5] which provides four methods for making that calculation. (*Pham v. Workers' Comp. Appeals Bd.* (2000) 78 Cal.App.4th 626, 633 [93 Cal.Rptr.2d 115] (*Pham*); *Gonzales v. Workers' Comp. Appeals Bd., supra,* 68 Cal.App.4th at p. 846.)

■ Although the statute uses the legal term "average weekly earnings," it is well established that "earning capacity" remains the benchmark for determining "average weekly earnings" regardless of which statutory method is applicable. (*Gonzales v. Workers' Comp. Appeals Bd., supra,* 68 Cal.App.4th at p. 846; *West v. Industrial Acc. Com.* (1947) 79 Cal.App.2d 711, 722 [180 P.2d 972] [earning capacity is the "touchstone" in determining average earnings].)

Moreover, "[e]arning capacity is not locked into a straitjacket of the actual earnings of the worker at the date of injury; the term contemplates his general over-all capability and productivity; the term envisages a dynamic, not a static, test and cannot be compressed into earnings at a given moment of time. The term does not cut 'capacity' to the procrustean bed of the earnings at the date of injury." (*Goytia v. Workers' Comp. Appeals Bd.* (1970) 1 Cal.3d 889, 894 [83 Cal.Rptr. 591, 464 P.2d 47] (*Goytia*).)

■ Nevertheless, with respect to permanent employees, application of the first three statutory methods will generally result in a determination of earning capacity that is equivalent to the worker's actual earnings. (*Pham,*

---

[5] Section 4453, subdivision (c) states: "(c) Between the limits specified in subdivisions (a) and (b), the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as follows:

"(1) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be the number of working days a week times the daily earnings at the time of the injury.

"(2) Where the employee is working for two or more employers at or about the time of the injury, the average weekly earnings shall be taken as the aggregate of these earnings from all employments computed in terms of one week; but the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury.

"(3) If the earnings are at an irregular rate, such as piecework, or on a commission basis, or are specified to be by week, month, or other period, then the average weekly earnings mentioned in subdivision (a) shall be taken as the actual weekly earnings averaged for this period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay.

"(4) Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments."

*supra,* 78 Cal.App.4th at p. 633; *Argonaut Ins. Co. v. Industrial Acc. Com.* (1962) 57 Cal.2d 589, 594 [21 Cal.Rptr. 545, 371 P.2d 281] *(Montana).)* As the Supreme Court explained in *Goytia,* "the Legislature deliberately established earning capacity as the test for the fourth subdivision as distinguished from the actual earnings for the other three subdivisions. Section 4453 provides for the computation of both temporary and permanent disability indemnity. Subdivisions (a), (b), and (c) relate to full-time employees, employees working for two or more employers, and employment at an irregular rate, such as piecework or work on a commission basis. Each of those subdivisions provide for computation of 'average annual earnings for purposes of permanent disability indemnity' based upon earnings prior to the injury." *(Goytia, supra,* 1 Cal.3d at p. 894, fn. omitted.)

By contrast, the fourth method, formerly subdivision (d) of section 4453 (Stats. 1939, ch. 308, § 2, p. 1581), now codified in subdivision (c)(4), provides that when "employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments."

■ The purpose of this fourth method "is to equalize for compensation purposes the position of the full-time, regularly employed worker whose earning capacity is merely a multiple of his daily wage and that of the worker whose wage at the time of injury may be aberrant or otherwise a distorted basis for estimating true earning power." *(Montana, supra,* 57 Cal.2d at p. 594 [construing § 4453, former subd. (d)].)

In light of these purposes, the courts have applied the fourth method to allow consideration of postinjury and preinjury earnings for applicants meeting the statutory requirements in cases involving temporary workers such as Davis *(Goytia, supra,* 1 Cal.3d at pp. 897–898 [seasonal worker entitled to benefits based upon postinjury permanent full-time employment]; *Westside Produce Co. v. Workers' Comp. Appeals Bd.* (1978) 81 Cal.App.3d 546, 552 [146 Cal.Rptr. 498] [seasonal worker entitled to benefits based on past and future earnings had she not been injured]) and part-time or full-time employees involved in educational self-improvement activities that greatly increased their earning capacity. *(Jeffares v. Workmen's Comp. App. Bd.* (1970) 6 Cal.App.3d 548, 553 [86 Cal.Rptr. 288]) [teaching credential]; *Pascoe v. Workmen's Comp. Appeals Bd.* (1975) 46 Cal.App.3d 146, 153 [120 Cal.Rptr. 199] [registered nursing license].)

■ We find the Board properly used subdivision (c)(4) in determining Davis's average weekly earnings. As stated, that provision is applicable when "the employment is for less than 30 hours per week, or where for any reason the foregoing methods . . . cannot reasonably and fairly be applied . . . ." (Subd. (c)(4).) Davis satisfies both predicates. First, he worked for the County for less than 30 hours, three hours to be exact. Second, as the Board found, it would be unreasonable, unfair, and inconsistent with relevant case law to ignore Mr. Davis's earnings capacity as an attorney for State Fund and limit him to the nominal $5 daily stipend paid for short-term temporary work. Clearly, Davis's earning capacity is better reflected by his work as an attorney at State Fund before and after his injury than by the nominal payment made by the County for his three hours of jury service. Indeed, the nominal daily fee paid to jurors is an aberrant, distorted, and inequitable basis for estimating Davis's true earning power. (*Montana, supra,* 57 Cal.2d at p. 594.)

While acknowledging that section 4453, subdivision (c)(2) is not applicable for determining temporary disability because Davis was disabled from both jobs during his recovery, the County nevertheless maintains it is the proper method for calculating Davis's permanent disability. We disagree.

■ Section 4453, subdivision (c)(2) contemplates an hourly rate of pay and neither the County nor State Fund paid Davis an hourly rate. Moreover, this method directs that "the average weekly earnings shall be taken as the aggregate of these earnings . . . ." (*Ibid.*) Here, there were no "aggregate earnings" because as a state worker,[6] Davis did not earn wages from the County. Code of Civil Procedure section 215 provides that a juror who is employed by a state government entity and who receives regular compensation and benefits while performing jury service, may not be paid a jury fee. Similarly, California Code of Regulations, title 2, section 599.672 provides that "[n]o deductions shall be made from the salary of an employee while on jury duty if the fee for jury duty is remitted to the State." Since Davis testified that he gave the County check to State Fund, he did not receive aggregate earnings.

The County's claim rests solely on *Leeth v. Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 1550 [231 Cal.Rptr. 468], which it asserts was improperly ignored by the Board. We find *Leeth* is inapposite because it involved dual permanent employment while the present case involves temporary employment.

---

[6] State Fund is a state public agency created by statute. (Ins. Code, § 11773; *Burum v. State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 585 [184 P.2d 505]; *State Compensation Ins. Fund v. Riley* (1937) 9 Cal.2d 126, 131 [69 P.2d 985].)

In *Leeth*, the court upheld the Board's decision that section 4453, subdivision (c)(2) rather than subdivision (c)(4) was applicable in determining the applicant's average weekly earnings. The applicant was injured while working at his permanent part-time job where he was paid $75 for two weekends a month. He also had permanent full-time employment during the regular workweek where he was paid an hourly rate of pay. The court gave great weight to the Board's construction of the statute and found subdivision (c)(4) did not apply to dual or multiple employment situations simply because determination of the average weekly earnings under subdivision (c)(2) would reduce the benefits to a minimum rate of disability. (*Leeth v. Workers' Comp. Appeals Bd., supra*, 186 Cal.App.3d at p. 1557.) The court further found the applicant had failed to meet his burden of proving that subdivision (c)(2) could not fairly and reasonably be applied. (186 Cal.App.3d at p. 1557.)

Nevertheless, the court in *Leeth* noted that "there will be situations in which subdivision (c)(4) should be applied when a worker with two or more jobs is injured in lesser-paying part-time employment." (*Leeth v. Workers' Comp. Appeals Bd., supra*, 186 Cal.App.3d at p. 1557.) In so stating, the court cited several single employment cases (see *Pascoe v. Workmen's Comp. Appeals Bd., supra*, 46 Cal.App.3d 146, *Goytia, supra*, 1 Cal.3d 889), as illustrative of situations where subdivision (c)(4) was properly used because the applicant had received or was likely to receive a higher salary after the date of injury. (*Leeth, supra*, 186 Cal.App.3d at p. 1557.)

However, there is nothing in subdivision (c)(4) which limits its application to single employment cases and we see no reason for such a limitation. The benchmark for determining a worker's "average weekly earnings" is the worker's "earning capacity" (*Gonzales v. Workers' Comp. Appeals Bd., supra*, 68 Cal.App.4th at p. 846) and as the court in *Montana* explained, it would hardly be consistent with the purpose of subdivision (c)(4) "to foreclose a worker from a maximum . . . permanent award simply because a *brief recession* had forced him to work sporadically or at a low wage." (*Montana, supra*, 57 Cal.2d at p. 594, italics added.) Davis was compelled to work for the County for a brief period of time and at a very low wage, an amount that clearly does not reflect his earning capacity before or after his injury. Accordingly, we hold that subdivision (c)(4) is the proper method for determining Davis's earning capacity and conclude the Board properly determined he is entitled to benefits computed at the maximum rate of pay.

## DISPOSITION

The Board's opinion and decision denying reconsideration is affirmed. James Davis shall recover his costs in this proceeding. (Cal. Rules of Court, rule 8.490(m)(1), (2).)

Sims, J., and Morrison, J., concurred.