[No. F048255. Fifth Dist. Aug. 31, 2006.]

SIGNATURE FRUIT COMPANY et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and EVA OCHOA,
Respondents.

792

CounseL

Mullen & Filippi and Paula E. White for Petitioners.

Esequiel Solorio for Respondent Eva Ochoa.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

**WISEMAN, J.**—Signature Fruit Company petitions this court to review a decision of the Workers' Compensation Appeals Board (WCAB) awarding one of its seasonal employees, Eva Ochoa, temporary disability benefits. We recognize that, effective January 1, 2003, an amendment to the workers' compensation laws established a minimum level of average weekly earnings. This case presents a unique twist to what otherwise might be a fairly simple calculation. The parties stipulated that Ochoa would be employed *only* during the season, from July 29 through September 9, 2003. The record supports the stipulation by revealing that Ochoa could only recall working as a seasonal employee with Signature Fruit Company in recent years. Under these unique circumstances, we conclude that Ochoa is not entitled to receive temporary disability payments for a time when there is no question that she would not have been working and earning income—whether injured or not.

To illustrate the point, we will assume Ochoa remained temporarily disabled throughout all of 2004. If she did, the WCAB's award would result in her receiving well over 200 percent of her regular annual income for a time when there is *no question that she would not have been working*. In enacting workers' compensation reform, we do not believe the Legislature intended this result. That said, our decision is a narrow one. We express no opinion on calculating a seasonal employee's off-season temporary disability where the employee maintains off-season earnings below the minimum average weekly earnings rate.

## *PROCEDURAL AND FACTUAL HISTORIES*

Eva Ochoa worked as a seasonal sanitation worker for Signature Fruit Company (Signature) since 1998. The parties stipulated that (1) Ochoa's 2003 employment "in-season" ran from July 29 though September 9 with average weekly earnings of $548.38; and (2) she did not have any earnings or engage in any employment during her "off-season" throughout the remainder of the year.

On September 1, 2003, Ochoa was washing a floor at a Signature worksite in Modesto when a passing forklift jerked a water hose out of her hand. Signature admitted Ochoa suffered an industrial injury but disputed the nature and extent of the injury. She continued working for several days until she sought medical treatment at Signature's expense on September 4, 2003, with Bradley Tourtlotte, M.D. Dr. Tourtlotte restricted Ochoa to limited use of her right hand for up to eight hours per day and instructed her to return to check her condition on September 8, 2003.

Signature was unable to accommodate Ochoa's work restrictions and paid her temporary disability from September 4 through September 8, 2003, at a rate of $365.59 per week based on two-thirds of her in-season average weekly earnings. There is no indication in the record that Ochoa returned for followup with Dr. Tourtlotte on September 8, 2003, as directed. Signature laid off Ochoa at the end of her annual employment season on September 9, 2003, and stopped providing her with temporary disability payments. On October 6, 2003, Ochoa commenced treatment with a chiropractor, Pedram Vaezi, D.C., who certified that she was totally temporarily disabled. The chiropractor referred Ochoa to a physician, Bal Rajagopalan, M.D., at an orthopedic and sports medicine clinic, who described Ochoa on February 26, 2004, as "having subacromial tendonitis and frozen shoulder," but also noted that her muscle activity electromyogram results were negative and her MRI was "essentially normal."

Ochoa believed she should have been awarded temporary disability payments during her off-season in addition to the four days of temporary disability Signature provided. She brought that limited issue before the WCAB for an expedited hearing on April 13, 2004. Relying on a January 1, 2003, amendment to the workers' compensation law recasting an employee's minimum average weekly earnings at $189, the workers' compensation administrative law judge (WCJ) agreed with Ochoa and concluded she was entitled to temporary disability payments at two-thirds that minimum average weekly earnings rate, or $126 per week, during her off-season of regular unemployment. (Lab. Code,[1] § 4453, subd. (a)(8).)

Signature petitioned the WCAB for reconsideration, claiming the medical evidence failed to demonstrate that Ochoa was temporarily totally disabled beyond September 8, 2003, and that even if such evidence existed, Ochoa was not entitled to temporary disability payments after her seasonal employment term ended. The WCJ who issued the decision resigned from state service and did not prepare a report and recommendation to the WCAB. The WCAB granted Signature's petition and subsequently issued its own opinion and decision after reconsideration. The WCAB concluded that the substantial

---

[1] Further statutory references are to the Labor Code.

evidence claim was not properly before it since it was not raised at the expedited hearing and concurred with the WCJ that Ochoa was entitled to temporary disability payments of $126 per week during her off-season.

## *DISCUSSION*

Signature contends that the WCAB misapplied the law, legislative intent, and public policy of the state by awarding Ochoa temporary disability benefits during her off-season of regular unemployment. Lacking any dispute over the underlying facts, Signature presents a pure question of law reviewable by this court de novo. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (*Lauher*).) "Questions of statutory interpretation are, of course, for this court to decide." (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26].)

In reviewing a workers' compensation provision, we give great weight to the WCAB's interpretation unless it contravenes legislative intent as evidenced by clear and unambiguous statutory language. (*E & J Gallo Winery v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1536, 1543 [37 Cal.Rptr.3d 208].) In addition, we look to the overall scheme of which a provision is a part and consider the consequences that will flow from a particular construction so as to achieve wise policy rather than mischief or absurdity. (*Id.* at pp. 1543–1544.) We must also consider fairness, reasonableness, and proportionality of an enactment and the purposes sought to be achieved. (*Henry v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 981, 985 [80 Cal.Rptr.2d 631].) As with other workers' compensation provisions, statutes regarding temporary disability are construed liberally in favor of granting benefits to injured workers. (§ 3202; *Lauher, supra,* 30 Cal.4th at p. 1290.) Even a liberal interpretation, however, will not extend temporary disability benefits where they are not authorized. (*Lauher,* at p. 1293.)

■ A temporary disability is an impairment reasonably expected to be cured or materially improved with proper medical treatment. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd., supra,* 16 Cal.App.4th at p. 235.) Unlike permanent disability, which compensates an injured employee for diminished future earning capacity or decreased ability to compete in the open labor market, temporary disability is intended as a substitute for lost wages during a period of transitory incapacity to work. (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 753 [7 Cal.Rptr.2d 808, 828 P.2d 1195].) That purpose "is inferable from section 4653, which requires temporary total disability be calculated as 'two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market.' " (*Lauher, supra,* 30

Cal.4th at p. 1291.) Average weekly earnings for purposes of both temporary and permanent disability payments are calculated according to various provisions of section 4453. Regardless of which provision applies, the ultimate concern is the employee's earning capacity. (*Pham v. Workers' Comp. Appeals. Bd.* (2000) 78 Cal.App.4th 626, 632–633 [93 Cal.Rptr.2d 115]; *Gonzales v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 843, 846 [81 Cal.Rptr.2d 54].)

## I. *Jimenez v. San Joaquin Valley Labor*

In *Jimenez v. San Joaquin Valley Labor* (2002) 67 Cal.Comp.Cases 74 (*Jimenez*), the WCAB, sitting en banc,[2] examined the appropriate method of calculating the average weekly earnings of a seasonal farm worker injured in 1994 for purposes of temporary disability and former vocational rehabilitation benefits.[3] The WCAB limited its analysis to true seasonal employees "who work reasonably identifiable and defined seasons of reasonably identifiable and defined duration," and not intermittent employees "where the duration of a particular project may be limited, but the evidence establishes the employee has worked (and/or likely will work) periodically throughout the year." (*Jimenez, supra,* at p. 79, fn. 9.)

Relying on the Supreme Court's decision in *Argonaut Ins. Co. v. Industrial Acc. Com.* (1962) 57 Cal.2d 589 [21 Cal.Rptr. 545] (*Montana*), the WCAB reasoned that the essential objective in determining earnings for purposes of a temporary disability award "is to predict what the employee's earnings would have been during his or her period(s) of temporary disability, but for the industrial injury." (*Jimenez, supra,* 67 Cal.Comp.Cases at p. 77.) " 'The applicant's ability to work, his age and health, his willingness and opportunities to work, his skill and education, the general condition of the labor market, and employment opportunities for persons similarly situated are all relevant.' " (*Ibid.,* quoting *Montana, supra,* 57 Cal.2d at pp. 594–595.) Given that temporary disability is designed to help replace lost wages, the WCAB concluded that "an industrially injured seasonal employee shall be awarded temporary disability indemnity at two rates: (1) an in-season rate based on the employee's in-season earnings capacity and (2) an off-season rate based on the employee's off-season earnings capacity, taking into consideration such factors as the employee's earnings history . . . ." (*Jimenez,*

---

[2] An en banc decision of the WCAB binds future WCAB panels and WCJ's as legal precedent in the same manner as a published appellate opinion. (Cal. Code Regs., tit. 8, § 10341; *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1424, fn. 6 [118 Cal.Rptr.2d 105]; see § 115.)

[3] Assembly Bill No. 227 (2003–2004 Reg. Sess.) repealed vocational rehabilitation benefits for dates of injury after 2003. (See former §§ 139.5, 4635–4647, repealed by Stats. 2003, ch. 635, §§ 14, 14.3.)

*supra*, 67 Cal.Comp.Cases at pp. 75, 78.) The WCAB found this distinction "significant because, for full-time and other regular and on-going employments, the employments (but for the injury) would normally have lasted as long as the period of temporary disability. This, however, is frequently not true for seasonal employments." (*Id.* at p. 80, fn. 11.) The WCAB upheld the WCJ's determination that the injured employee was not entitled to temporary disability during her off-season where the parties stipulated she did not have any off-season earnings. (*Id.* at pp. 81–82.)

The WCAB explained in *Jimenez* that the WCJ implicitly relied on section 4453, subdivision (c)(4), in not awarding the employee off-season temporary disability. (*Jimenez, supra,* 67 Cal.Comp.Cases at pp. 77–78.) Unlike subdivision (c)(1) through (3) of section 4453, which base average weekly earnings on actual earnings as evidence of earnings capacity under certain circumstances not relevant here, subdivision (c)(4) requires an estimate of earnings capacity for part-time employment or other situations where the first three formulae do not yield a fair result.[4] (*Goytia v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 894–895 [83 Cal.Rptr. 591, 464 P.2d 47]; *Gonzales v. Workers' Comp. Appeals Bd., supra,* 68 Cal.App.4th at p. 847; *Grossmont Hospital v. Workers' Comp. Appeals Bd.* (1997) 59 Cal.App.4th 1348, 1354-1355, 1362 [69 Cal.Rptr.2d 842].)

Regardless of whether average weekly earnings are calculated from actual earnings history or estimated earnings capacity, the result is subject to the limits set forth in section 4453, subdivision (a), for temporary and permanent total disability. (§ 4453, subd. (c).) Applicable under *Jimenez*, the average weekly earnings limitations for temporary disability under section 4453, subdivision (a)(5), were "not less than the lesser of one hundred eighty-nine dollars ($189) or 1.5 times the employee's average weekly earnings from all employers, nor more than six hundred nine dollars ($609), for injuries occurring on or after July 1, 1994."

Reading section 4453, subdivisions (a)(5) and (c)(4), in conjunction, the law at the time of *Jimenez* provided that, in determining the average weekly earnings minimum for an employee who worked less than 30 hours per week or where average weekly earnings otherwise could not reasonably and fairly be applied, the WCAB was required to adopt the lesser of either the specified $189 or the employee's estimated earning capacity multiplied by 1.5. The

---

[4] Section 4453, subdivision (c)(4), provided at the time of *Jimenez* and now: "Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments."

resulting average weekly earnings were next multiplied by two-thirds to determine the employee's weekly temporary disability payment. (§ 4653.) The WCAB reasoned in *Jimenez* that, because of the alternate average weekly earnings calculation, a seasonal employee without any off-season average weekly earnings would receive nothing in temporary disability during the period of regular unemployment. ($0.00 earnings capacity [§ 4453, subd. (c)(4)] x 1.5 [§ 4453, subd. (a)(5)] x 2/3 [§ 4653] = $0.00 temporary disability.)

## II. Assembly Bill No. 749

Effective January 1, 2003, the Legislature enacted Assembly Bill No. 749 (2001–2002 Reg. Sess.) amending section 4453.[5] (Stats. 2002, ch. 6, § 57.) The Legislative Counsel's digest explained that the "bill would provide for increased temporary disability and permanent partial disability and death benefits for injuries or deaths occurring on or after January 1, 2003, with additional increases in benefits phased in over several years." (Legis. Counsel's Dig., Assem. Bill No. 749 (2001–2002 Reg. Sess.) as chaptered Feb. 19, 2002, ¶ (21); see also Legis. Counsel's Dig., Assem. Bill No. 486 (2001–2002 Reg. Sess.) as chaptered Sept. 26, 2002, ¶ (7).) Among other changes, the legislation added subdivision (a)(8) to section 4453 providing that the average weekly earnings for purposes of temporary disability shall be "[n]ot less than one hundred eighty-nine dollars ($189), nor more than nine hundred three dollars ($903), for injuries occurring on or after January 1, 2003." Assembly Bill No. 749 also set the same $189 minimum—but a higher $1,092 maximum—average weekly earnings rates for dates of injury occurring on or after January 1, 2004. (§ 4453, subd. (a)(9).) The enactment further establishes a formula for increasing both the minimum and maximum average weekly earnings rates based on the state average weekly wage beginning January 1, 2007. (§ 4453, subd. (a)(10).) None of the amendments to section 4453, subdivision (a), include the alternate method of calculating the minimum average weekly earnings by multiplying 1.5 times the employee's average weekly earnings. Even so, the alternate method remains in section 4453, subdivision (a), for dates of injury between 1990 and 2002 (§ 4453, subd. (a)(3)–(7)), but not for dates of injury before 1990 (§ 4453, subd. (a)(1)–(2)).

## III. Assembly Bill No. 749 and seasonal employment

In response to Signature's petition for reconsideration, the WCAB affirmed its holding in *Jimenez* that temporary disability may be awarded at distinct

---

[5] During the same legislative session, the Legislature subsequently reaffirmed its amendment to section 4453 in Assembly Bill No. 486 (2001–2002 Reg. Sess.). (Stats. 2002, ch. 866, § 9.) Section 4453 is identical in both enactments as to calculating an employee's minimum average weekly earnings.

in-season and off-season rates. The WCAB also concluded that section 4453, subdivision (a), no longer permits an employee's off-season average weekly earnings to fall below the statutory minimum of $189:

"[W]e conclude that the same analysis set forth in *Jimenez* is still a valid analysis, and that in seasonal worker cases, temporary disability indemnity may be awarded at two different rates, i.e., an in-season rate based upon actual earnings and an off-season rate based upon the employee's off-season earning capacity taking into consideration such factors . . . as the employee's earning history, his/her ability to work, age, and health, education, and skill as well as other employment opportunities and the general condition of the labor market. Thus, in a situation where there is no earnings history or other factors to indicate that the applicant has an earnings capacity above zero to $189, the applicant is simply entitled to the minimum rate. The amendment to Labor Code section 4453, re-establishing a floor for the temporary disability indemnity rate, does not require a different analysis, but simply re-inserts a minimum average weekly earning capacity rather than an earnings capacity that may fall to zero.

"Since the WCJ found that applicant is entitled to the minimum rate of $126.00 per week in the off-season, that finding is consistent with the foregoing analysis of temporary disability indemnity being awarded at two different rates, with the floor of $126.00 per week where the injured employee has no off-season earning capacity. Accordingly, we will affirm the WCJ's decision."

The WCAB's statement that the "amendment to Labor Code section 4453, re-establishing a floor for the temporary disability indemnity rate" references the former method of determining minimum average weekly earnings before 1990 when section 4453, subdivision (a)(1) and (2), as well as prior versions of the statute, did not contain the alternate method of multiplying the employee's actual earnings by 1.5. (*Pham v. Workers' Comp. Appeals Bd.*, *supra*, 78 Cal.App.4th at p. 632, fn. 6.) While the WCAB acknowledged that Assembly Bill No. 749 (2001–2002 Reg. Sess.) resurrected the former method of establishing an injured employee's average weekly earnings for purposes of setting temporary disability, it did not address in its opinion how average weekly earnings would have been determined for seasonal employees under the prior scheme.

Arguing that the law before 1990 would not have permitted a seasonal employee's off-season earnings to fall below the statutory minimum, Signature relies on *Westside Produce Co. v. Workers' Comp. Appeals Bd.* (1978) 81 Cal.App.3d 546 [146 Cal.Rptr. 498] (*Avila*), where the employer alleged that an injured seasonal worker's regular employment period would

have ended a week after she sustained an industrial injury to her wrist. (*Id.* at p. 549.) Former section 4453, similar to current section 4453, subdivision (c), mandated that the employee's average weekly earnings for purposes of temporary disability were to fall between $52.50 and $231. (*Avila, supra,* 81 Cal.App.3d at pp. 550–551.) The *Avila* court reasoned that, "[i]n determining the earnings for purposes of temporary disability, the question is whether the injured would have continued working at a given wage for the duration of the disability." (*Id.* at p. 551.) The court concluded that, because the employee "was hired as a seasonal worker, temporary disability is payable based upon earnings at the time of injury only for that period the employment would have continued." (*Id.* at p. 552.) "After the employment would have terminated, [the employee] is entitled to temporary disability considering her past earnings history and her anticipated future earnings had she not been injured." (*Ibid.*)

While *Avila* supports the WCAB's application of separate in-season and off-season average weekly earnings rates for employees with distinct employment seasons, it does not answer the more specific question whether an employee's off-season temporary disability could fall below two-thirds of the statutory minimum average weekly earnings before 1990. *Avila* simply did not address whether the former versions of section 4453, without the alternative method of calculating average weekly earnings, established some sort of entitlement for a seasonal employee to receive off-season permanent disability. We nevertheless find the legislative amendments to calculating average weekly earnings under section 4453 over the years not controlling in the determination of off-season temporary disability.

■ We concur with the WCAB's conclusion in *Jimenez,* although for a different reason, that a seasonal employee is not entitled to temporary disability during her off-season where the parties stipulated she did not have any off-season earnings. Interpreting Assembly Bill No. 749's (2001–2002 Reg. Sess.) amendments to section 4453, subdivision (a), in isolation, we agree with the WCAB and Ochoa that the Legislature effectively established a minimum average weekly earnings that, per subdivision (c), may not fall below $189. Section 4453, however, does not set the level of temporary disability payments an injured employee is entitled to receive; by its own terms, section 4453 only establishes the employee's average weekly earnings used in calculating the employee's temporary disability. Section 4653 establishes the method of setting the permanent disability payments. That section provides: "If the injury causes temporary total disability, the disability payment is two-thirds of the average weekly earnings during the period of such disability, *consideration being given to the ability of the injured employee to compete in an open labor market.*" (Italics added.) This second phrase of section 4653 is particularly applicable here.

■ Accepting as true, as we must, Ochoa's stipulation that she was routinely unemployed during her off season, she lacked the ability—whether the capacity, the opportunity, or the willingness—to compete in the open labor market beyond her seasonal employment with Signature. Ochoa therefore never intended to work past September 9, 2003, until her next employment season. Interpreting the statute in its entirety, section 4653 requires the WCAB to take an injured worker's particular employment history and prospects into account before mechanically multiplying her average weekly earnings by two-thirds to determine the temporary disability payment. In the vast majority of situations, we presume that the two-thirds average weekly earnings mathematical calculation alone results in the appropriate level of permanent disability contemplated by the Legislature that must be awarded. In the case of a seasonal employee with no off-season earnings, however, the mathematical calculation is irrational. By simply multiplying the $189 nominal average weekly earnings minimum by two-thirds to award Ochoa weekly temporary disability payments of $126 when she otherwise would not be working, the WCAB failed to issue a temporary disability award with "consideration being given to [her] ability . . . to compete in an open labor market." (§ 4653.) Because section 4653 requires the WCAB to consider employment marketability in awarding temporary disability, we conclude that a seasonal employee who voluntarily or by necessity makes herself unavailable for employment during part of the year may not receive temporary disability payments during her regular off season of unemployment. Since the issue is not before us, we do not address the situation where a seasonal employee has a history or potential for some minimal level of off-season earnings below the minimum average weekly earnings rate set forth in section 4453. (*Nabors v. Workers' Comp. Appeals Bd.* (2006) 140 Cal.App.4th 217, 225 [44 Cal.Rptr.3d 312] ["The practice of distinguishing one case from another is based, after all, on the assumption that the holding of an appellate court is limited to the facts of the case before it"].)

■ Our reading of section 4653 conforms not only with the plain reading of the statute, but also with the state's long-standing policy for providing injured employees with temporary disability. It is well settled that temporary disability is intended as a substitute for an injured worker's lost wages. (*Lauher, supra,* 30 Cal.4th at p. 1291; *Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328]; *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 168 [193 Cal.Rptr. 157, 666 P.2d 14]; *Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 403 [71 Cal.Rptr. 678, 445 P.2d 294].) "[T]he case law makes clear that the essential purpose of temporary disability indemnity is to help replace the wages the employee would have earned, but for the injury, during his or her period(s) of temporary disability." (*Jimenez, supra,* 67 Cal.Comp.Cases at p. 78.) "In contrast, permanent disability indemnity

compensates for the residual handicap and/or impairment of function after maximum recovery from the effects of the industrial injury have been attained." (*Lauher, supra,* 30 Cal.4th at p. 1291.) We do not address here the question of Ochoa's ability to obtain a permanent disability rating and, if so, the appropriate amount.

The Supreme Court has explained that, because temporary disability serves to replace lost wages, "an employer's obligation to pay [temporary disability indemnity] to an injured worker ceases when such replacement income is no longer needed." (*Lauher, supra,* 30 Cal.4th at pp. 1291–1292.) Temporary disability payments end when the employee returns to work, is deemed able to return to work, or achieves permanent and stationary status and therefore becomes eligible for permanent disability. (*Ibid.*) Under the same reasoning, it would be illogical to award an employee temporary disability as a wage replacement where it is undisputed that there otherwise would not be a wage to replace.

Ochoa's situation exemplifies the absurdity of awarding her off-season temporary disability based solely on section 4453's minimum average weekly earnings rate. Ochoa's regular employment season ran almost exactly six weeks between July 29 and September 9, 2003. According to her stipulated earnings of $548.38 per week, she would have earned a total of $3,290.28 in 2003 had she not been injured. ($548.38 x 6 weeks = $3,290.28.) Yet here, Ochoa became temporarily disabled on September 4, 2003, and Signature replaced four days of her regular daily earnings with temporary disability at the rate of $365.59 per week, leaving her with $3,185.83 in combined in-season earnings and temporary disability—a reduction of only $104.45 as a result of her industrial injury. (($548.38 x 4/7) - ($365.59 x 4/7) = $104.45 loss in earnings.) Considering first the remainder of 2003, the WCAB effectively awarded Ochoa approximately 16 weeks of off-season temporary disability from September 10 though December 31, 2003, at $126 per week amounting to $2,016 in temporary disability. (16 weeks x $126 = $2,016.) Under the WCAB's award, Ochoa's 2003 income would increase to $5,201.83—158 percent of the $3,290.28 she would have otherwise earned had she not been injured. If Ochoa remained temporarily disabled throughout all of 2004, the WCAB's award would grant her an annual income of $7,989.54. ((46 weeks x $126) + (6 weeks x $365.59) = $7,989.54.) She would therefore earn nearly 243 percent of her regular $3,290.28 annual income. A system that rewards a seasonal employee for sustaining an industrial injury likely would create an economic incentive for employees to exaggerate their level of disability and encourage them to malinger on temporary disability. We cannot condone this type of windfall to an injured employee where the Legislature has specifically mandated that an employee's ability to compete in the open labor market must be considered in calculating temporary disability.

Ochoa's counsel waited until oral argument to advise us about a similar workers' compensation case, *Magana v. National Union Fire Ins. Dist.* (2005) 33 Cal. Workers' Comp. Rptr. 190 (*Magana*), summarized in the California Workers' Compensation Reporter monthly newsletter. This delay is difficult to understand because Ochoa's appellate counsel argued *Magana* on behalf of another employee against the same employer, Signature, addressing an identical question. The WCAB denied reconsideration of *Magana* on April 26, 2005. In doing so, the WCAB summarily adopted the WCJ's rejection of the en banc *Jimenez* decision to award a seasonal employee "with no significant earnings" during the off-season temporary disability of $126 per week. Without distinguishing between employment seasons, the WCAB annualized the employee's actual weekly earnings and awarded a consistent level of temporary disability throughout the year based on the revised $189 minimum average weekly earnings rate. (*Magana, supra,* at p. 191.) Ochoa's counsel apparently brought *Magana* to our attention at this late point in the appeal as authority to award Ochoa minimum temporary disability payments during her off-season in light of the recent amendment to section 4453. Unlike *Magana*, however, Ochoa seeks not only the minimum rate during her off-season, but also the higher temporary disability rate based on her stipulated earnings during her in-season.

It is well settled that WCAB decisions and denials of reconsideration reported in the California Compensation Cases and California Workers' Compensation Reporter are properly citable authority to the extent they point out the WCAB's "contemporaneous interpretation and application of the workers' compensation laws . . . ." (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186].) *Magana*, however, does *not* take us toward that goal with respect to the treatment of seasonal employees. On May 10, 2005, two of the three WCAB commissioners who denied reconsideration in *Magana* just two weeks earlier reconsidered the same question in Ochoa's case and issued a written opinion and decision after reconsideration reaching a very different conclusion. Further, no party in Ochoa's case, including the WCAB, advocates abandoning *Jimenez*'s application of distinct in-season and off-season rates. We therefore find *Magana* unpersuasive in expressing the WCAB's interpretation of the effects of Assembly Bill No. 749 (2001–2002 Reg. Sess.) on seasonal employees and disagree with its reasoning.

■ Consistent with the legislative intent of section 4653, we conclude that temporary disability during a seasonal employee's in-season period of regular employment is payable based upon two-thirds of the employee's in-season average weekly earnings, subject to the minimum and maximum levels established under section 4453. Where, however, an employee does not have any off-season earnings and does not compete in the open labor market during a portion of the year, the employee is not entitled to temporary

disability payments during that season. We do not express any opinion in calculating a seasonal employee's off-season temporary disability where the employee maintains some level of off-season earnings below the minimum average weekly earnings rate.

## *DISPOSITION*

The WCAB's opinion and decision after reconsideration is annulled. The matter is remanded to the Workers' Compensation Appeals Board to recalculate Ochoa's temporary disability award. Ochoa's request for attorney fees under section 5801 is denied. The parties shall bear their own costs on appeal.

Vartabedian, Acting P. J., and Hill, J., concurred.

The petition of respondent Eva Ochoa for review by the Supreme Court was denied November 29, 2006, S147255. Corrigan, J., did not participate therein.